[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 11 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 12 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 13 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 14 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 15 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 16 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 17 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 18 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 19 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 20 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 21 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 22 
All the material questions of law, upon which the parties in this case disagree, arise upon the alleged satisfaction of the legacy of $100,000 of deposit in the *Page 23 
New-York Life Insurance and Trust Company, bequeathed to the plaintiff in the second codicil of the testator's will. The advancement made to her by the testator, in his lifetime, was of funds of the same precise description as those bequeathed. The entries in his account books describe the funds accurately, and there is no mistake in the reference to the testamentary paper in which the legacy is found. In regard to the other legacy claimed, there is an important question upon the construction of the language of the entries, as to the bequest to which they refer, which will be subsequently examined. I will now endeavor to ascertain whether the first mentioned legacy has been legally satisfied, so that it cannot be claimed at the hands of the executors.
It is proved that the testator caused to be issued to a trustee, for the plaintiff, a certificate of deposit in the Trust Company, being the usual evidence of ownership of this kind of property, which upon its face expressed a trust in favor of the plaintiff as to the income for her life, and conveyed a vested interest to her six children, mentioned in the bequest, as legatees in remainder. It is not questioned but that this settlement in favor of the plaintiff was a gift, as distinguished from a conveyance upon a valuable consideration. It was voluntary on the part of the testator, and the plaintiff parted with nothing to obtain it. She was passive in the transaction, doing no act but to receive the evidence of the donation and the income of the gift, as it was paid to her by the trustee. She did not agree that it should have any effect upon the testamentary provisions in her favor, and it does not appear that she knew that the testator intended it should have any such effect, or indeed that she had any knowledge that the testator had made a will. It is, however, certain that the testator intended by the settlement not to bestow upon the plaintiff an additional bounty, but to give her, by way of anticipation, and in his lifetime, what he had inserted in his codicil as a legacy in her favor, *Page 24 
to take effect at his death. The gift, as he regarded it, was substitutional, and not cumulative. The contemporaneous entry in his account books states that the transfer was made to her as property left to her in a similar item in a codicil to his will. When he subsequently placed in her own hands the evidence of the fund, and found it convenient in the arrangement of his accounts to debit it to her personally, instead of the trustee to whom it was charged in the first instance, he referred to it as "being property bequeathed to her" by a similar item in the codicil. Not only the amount, but the kind of fund, and the successive estates given to the plaintiff and her children, are perfectly identical with the legacy. I think nothing more can be necessary to demonstrate that the testator intended to satisfy a prior, and not to make an additional gift; but if there were, it would be found in the draft which the testator retained of the codicil, and upon which he wrote that he had transferred to the plaintiff and her children the stock which was the subject of the legacy. This paper was given in evidence by the plaintiff, and is therefore competent against her. There is another feature of the case very material to be considered. The testator did not prepare and execute his testamentary papers in the immediate prospect of death. Several of them contain evidence that he expected to continue in the management of his property, and to add to and modify his testament, as he repeatedly did. As the proprietor of a very large and probably increasing estate, he contemplated making advancements and beneficial provisions, to operate intervivos, to those having the claims of kindred upon him. His immediate descendants were persons of mature age, the plaintiff herself having a married child, needing then, if they could hope to enjoy it, the pecuniary means they might reasonably expect to receive from the testator's bounty. The testator himself took the same reasonable view of the case. He intended not only to modify his testamentary dispositions from time to time, as a change of circumstances or of intention *Page 25 
should arise, but to make gifts in presenti, as he should find occasion, in his lifetime. He might make such gifts by way of addition to those he had set down in his will, or he might advance, by anticipation, the whole or portions of what he had thus set down. He therefore recited in his first codicil that he might make advancements or beneficial provisions for persons or purposes provided for in his will and codicils, and he thereupon directed that such advancements, if charged in his books of account, should be deemed so much, on account of the provision in his will or codicils, in favor of such persons or purposes. This direction looked to future codicils, as well as the one he was then preparing. This will be evident from reading the whole clause. It begins by making certain general provisions, which he declares shall apply to his will, to that codicil, and to any subsequent codicil; and when he comes to give directions respecting advancements in satisfaction for legacies, they are made to relate to legacies given by his will and codicils, in the plural number. The result is that the testator qualified all his legacies and beneficial provisions in all his testamentary papers with a condition, that if he should in his lifetime advance to the legatees, or persons beneficially provided for, the whole or a part of that which he had given them in those papers, and should indicate his intention that such advancements were on account of such legacies or beneficial provisions, by charging the same in his books of account, that then such legacies were to be considered paid and satisfied, in whole or in part, according to the amount of such advancements. There is no principle in the law which forbids the making of testamentary gifts dependent upon the happening or not happening of any event in the future, whether in the testator's lifetime or afterwards. A bequest may be made with a provision that it shall not be operative if the legatee shall in the testator's lifetime receive a particular sum of money from another person, or if he shall within that time become entitled to an estate as the heir or *Page 26 
legatee of another. So a testator may very properly provide that a legacy given in his will shall not be operative if he shall in his lifetime give the legatee the like sum. This is not the reservation of a license to alter or revoke his will by an unattested paper. The fact which is to destroy the legacy in such a case is not a change of purpose, a new act of testamentary volition, which requires an instrument in writing clothed with testamentary forms. The gift inter vivos is a fact in pais,
which does not require a writing, and the effect given to it, of superseding and extinguishing the legacy, is prescribed by the will itself, and is authenticated in the same manner as the legacy, of which it is in fact a part. It differs, it is true, from a condition which looks to the act of a third person, or the happening of an event in respect to which the testator is to have no agency; and I concede that a testator cannot prescribe in his will that an act to be performed by him, indifferent in itself and having no pertinency except its effect upon his testamentary dispositions, shall change such dispositions. Such a provision would allow a testator to alter his will otherwise than by an attested instrument. He cannot therefore declare that any mere entry in his books, or other writing without attestation according to the statute, shall in itself have any effect upon the provisions of his will. But the bestowal of a substantial sum of money or amount of property is an act of a different kind. It is a pecuniary transaction belonging to the actual business of life. It is an act which he may perform whether he has made a will or not. It effects a substantial change in the pecuniary condition both of the testator and the donee. No doubt a testator could make it a condition to the validity of a legacy, that his own estate should at his death amount to a certain sum; and yet he might, by gifts inter vivos, as well as in any other way, reduce his means below the amount expressed. So he certainly might prescribe that a legacy should not take effect if the legatee should in any manner, before the testator's *Page 27 
death, become possessed of a certain fortune. Plainly, then, he may declare that if he shall himself bestow upon his legatee an amount equal to what he otherwise proposed to give by his will, it shall take the place of the qualified testamentary gift. Such a provision would not be within any of the mischiefs of a parol or unattested revocation. The qualification of the testamentary gift must, as I have remarked, be attended with all the solemnities of the gift itself. The circumstance which is to determine whether the testamentary gift shall be operative at the testator's death is, in this case, an act taking effect inpresenti, and is one of those transactions of business which every owner of property may perform for its own sake, and without reference to its operation upon any instrument he may have executed. There is nothing in the policy of the law requiring it to be proved by other than the usual evidence. There is no special danger that it may be simulated or set up by false testimony against the truth of the case. Not being promissory or executory in its character, but taking effect as it does eoinstanti, with the volition of which it is the result, there is no danger that it may be done without a due appreciation of its character; as testaments, promises and other engagements, looking to the future for their consummation, may be and frequently are. It has not one of the characteristics of a testamentary act, and there is not, in my opinion, anything in the law that requires that it should be authenticated by testamentary formalities. I am therefore of opinion that if this will had simply provided that the legacy in question should not be payable if the testator should in his lifetime give the plaintiff an equal amount of the same stock which the legacy specified, the provision would be a valid qualification of the bequest, and the only material inquiry would be, whether he had made such gift after the execution of the codicil.
But the testator added to the condition the further requirement, that the advancements which he might make should, *Page 28 
in order to be applied on account of the legacies, be charged in his books of account. If he might lawfully declare that a simple advancement should satisfy a legacy, he might provide that only such as should be made under special circumstances should have that operation. He obviously intended to guard, so far as he might by great caution, against any doubt or uncertainty in carrying out his testamentary provisions. He did not wish to restrain himself from making donations which should be wholly independent of, and unconnected with, the gifts in his will and codicils. If the will had provided that a simple advancement to a legatee should go in satisfaction of the legacy, any subsequent gift made by him might have that effect, though intended as an additional gratuity. To provide against this difficulty, and to prevent as far as possible any uncertainty which might lead to controversy and litigation, he proposed to put a mark upon such subsequent donations as he did not intend to have considered cumulative. If they should be found charged upon his books against the legatee, they were to be taken, without further proof of intention, to be in satisfaction of the legacy bequeathed to the person to whom they were made and against whom they were charged. If not so charged I do not say that it might not be shown, by reference to the instrument of donation or other competent evidence, that they were given in satisfaction; but if no such proof could be given, I think they would be taken to be donations made in addition to the legacies. The entries alone have no effect upon the bequests. It is the fact of the advancement, taken in connection with the prescriptions of the codicil, which operates to adeem the legacy. But the testator supposed he might make advancements which he would desire to have taken as additional free gifts. Those he would have a right to make, notwithstanding the provisions respecting the satisfaction of legacies. What he intended by requiring entries to be made in his books of account was, to provide a ready means of distinguishing *Page 29 
between the two species of gifts. Suppose his will had declared that all future advancements to his legatees should be taken as ademptions pro tanto, unless he should charge the sums advanced to the account of profit and loss on his books of account, in which case they should not be so considered: would this limitation upon the direction make the whole void, as the reservation of a power to revoke and alter a will? Or suppose he had said: I intend hereafter in my lifetime to make advancements or beneficial provisions to my legatees, some of which I intend shall be additional gifts, and others anticipated payments of their legacies; the latter I will charge to my legatees in my account books, the others will not be so charged, and I direct that this indication of the intentions with which they are made shall be observed in determining which are further gifts and which are payments: this, I think, would not be objectionable, as the reservation of a power to alter his will by an unattested writing, and it is in effect what this testator has done in the present case. The charges in the account books, which were in the contemplation of the testator, were such as should be made in the course of business, and contemporaneous with the transactions to which they should relate. It is the theory of accounts kept by business men that, when money or property is parted with, the account which represented it when in the testator's possession should be credited, and some other account charged with the amount. If money is paid out, it is the account of "cash" which is credited; and if stocks are transferred, the account which represents the particular kind of stocks (or stocks generally, if there is but one account embracing all such securities) is credited. Then as to the debit: if what is parted with is given away absolutely, or so disposed of as to be wholly lost to the proprietor, the regular charge is to be profit and loss. If the subject of the entry is to be kept on foot for any purpose, it is charged to the proper person or the appropriate account; and where an accountability is transferred *Page 30 
from one account to another, it is credited to the former and charged to the latter. It is shown that the testator kept regular books of account; but, without proof, the court would no doubt intend that the accounts relating to his large estate would be kept in the usual manner. The will is to be construed with reference to these well known methods of transacting business. When, therefore, the will speaks of advancements to be subsequently made by the testator, and of the charging of such advancements in his books of account, it must be understood to speak of entries to be made in the usual course of business, and at the time of parting with the subject of the advancements. Entries thus made are parcel of the res gestæ; they are one feature of the transactions. If the matter is ex parte, or a voluntary gift or endowment which does not require any consideration or an undertaking on the other side, and where the only inquiry is as to the intent of the donor, it is of the essence of the thing, and, in the absence of evidence to contradict it, it characterizes conclusively the nature and object of the transfer. It seemed necessary to say thus much to distinguish the entries provided for in the codicil from a memorandum which might be used to declare the intention of a past transaction. I concede that a testator could not in his will reserve a right to qualify by an unattested writing a transaction which had already passed and taken effect, or which was the act of another person, so as by means thereof to affect legacies or other provisions in his testamentary papers. I think this distinction has been overlooked in the remarkably lucid and ingenious opinion of one of the judges of the Superior Court, which, contrary to the views which I entertain, denies any effect to the advancements which were made by the testator in this case. In that opinion a case is put as not in any respect distinguishable from the present. A parent, it is supposed by way of example, bequeaths a legacy to his daughter, declaring in his will that any and every sum of money that she may receive during his life as *Page 31 
a bounty from any relative shall be deemed so much on account of the provision for her in his will, provided that, by charging the sums so received in his, the testator's, books of account, he, the testator, shall declare his intention that they shall be applied to reduce the legacy. If, in this case, it is further said, a mere entry in the books of the testator of a sum received as a bounty by his daughter, together with proof of its actual reception, could be held to be pro tanto a valid revocation of the legacy, the defendants in this suit are entitled to prevail, and not otherwise. In the case supposed, the effect on the legacy would be wrought solely by the writing. The gift of the relative would not in its own nature have any operation, as regards the testator and his proposed testamentary provisions. It would beres inter alios and wholly indifferent. The testator could very properly qualify his legacy by providing that, if his legatee should be thus fortunate, his own proposed bounty towards her should not take effect; but he could not reserve the power of determining by a subsequent unattested writing whether that piece of good fortune should operate as a revocation of his bequest. The testator's whole will must be expressed in his testament. He may confer bounties absolutely or upon conditions; but he cannot reserve the power to make future conditions by unattested instruments, or to declare that acts indifferent as to his bequests should avail, according to his future pleasure, as a revocation of it. The case supposed would be a plain one of an attempt to dispense with the statute of wills. The case before us is, I think, an equally plain one of a gift upon condition, the condition being that the gift should fail in whole or in part if the testator should make an advancement to the plaintiff of the whole or a portion of the sum bequeathed, and should at the same time indicate by an entry in his books, made in the course of his business, that the advancement was on account of the legacy. *Page 32 
The case of Habergham v. Vincent (2 Ves., Jr., 204,reported also in 4 Brown's C.C., 353) is relied upon, in the opinion which I have mentioned, as a commanding authority against the position I am endeavoring to maintain. A freehold estate had been devised to trustees to pay debts and legacies and then to convey to persons named in tail, with several successive remainders in tail, and finally with remainder "to such persons for such estates and subject to such charges and conditions as the testator should by any deed or instrument with two or more witnesses appoint." The testator made a deed attested by two witnesses, appointing the remainder to the first son of a certain Richard Hill and his heirs male, c. It was held, first, that the deed was testamentary in its character, not being intended to take effect until after the testator's death; and secondly, that it was void from not being attested by three witnesses, according to the provisions of the statute of frauds. The soundness of the judgment upon the second point, which is the only one at all material, certainly cannot be questioned; it being quite plain that a testator cannot reserve to himself in his will the power to create further limitations of his estate by an instrument not attested according to the statute. The distinction between the case cited and the one under consideration is, that in the former the testator did not express his whole will in the attested paper, but attempted to create a power by his will to do so in the future by an instrument not attested according to law, while in this case the testator exhausted his disposing power as to this legacy in his will; and if it shall be held that it is not now payable, it will not be on account of any new exertion of the testator's disposing power, but because the event has happened upon which the will itself declared it should not be payable. The foregoing considerations lead me to the confident conclusion that the plaintiff is not entitled to the relief which she asks in respect to this legacy. *Page 33 
But there is another view of this case which leads to the same result. It is that the legacy is adeemed and satisfied by the advancement of the $100,000 of Trust Company certificates. In what I shall have to say upon this question, I shall assume that the legacy in question is not specific, but pecuniary and general.
In De Nottebeck v. Astor (3 Kern., 98) we held the legacy of $100,000 of the water loan, bequeathed to the plaintiff's children in the same terms, so far as this question is concerned, to be a legacy of quantity, with a specific fund, appointed by way of demonstration, for its payment. The legacy in question is not, perhaps, necessarily adeemed because the stock of which it was to consist has been conveyed to the legatee. Clearly, if it had been transferred to her for a valuable consideration, or as a gift intended by its terms to be cumulative, the legacy would not have been affected. The identity, however, of the subject of the gift inter vivos with the legacy is a circumstance of considerable importance, when we are seeking to ascertain the intent of the testator in making the transfer. If without any clause in the will prescribing the effect to be attributed to advancements, the testator had conveyed this stock to the plaintiff, and had not left any evidence of the intent with which it was made on his books, a presumption of fact, of considerable weight, would still have arisen that he intended to satisfy the legacy in question by the transfer. But taking into consideration the clause respecting advancements, and the entries, it is conclusively shown that the transfer in this case was intended to be in satisfaction. It is usually stated that general legacies may be adeemed by advancements made by the testator in his lifetime, and that the question whether a particular advancement should or should not be a satisfaction, or in satisfaction of what the testator had bequeathed to the person so advanced, is a question of fact to be determined only by reference to the intention of the donor. (1 Roper on Legacies, 365.) The *Page 34 
soundness of this position will be apparent from a reference to certain well settled doctrines in the English courts of equity. For instance, where a parent, or other person in loco parentis,
bequeaths a legacy to a child or grandchild, and afterwards, in his lifetime, gives a portion, or makes a provision for the same child or grandchild, without expressing it to be in lieu of the legacy, it will, in general, be deemed a satisfaction or ademption of the legacy. This is upon the ground that the legacy is considered a portion, and if the testator afterwards advances the same sum upon the child's marriage, or any other occasion, he does it to accomplish his original object in giving a portion. Under such circumstances, it is held to be intended by the testator as a satisfaction, and not a double portion. (Story'sEq. Jur., §§ 1111, 1112.) The relationship between the testator and the legatee creates a presumption of fact that the advancement was in the nature of payment, and was so intended. (Powell v. Cleaver, 1789, 2 Brown's Ch. R., 499.) In this case, Lord THURLOW said: "With respect to the question of ademption, the case of parent and child is a presumption of evidence only, and not a presumption of law." The case before him was that of a legacy to a stranger, and it was claimed to be satisfied from circumstances. The lord chancellor said he had gone through all the cases, "and it appears," he said, "to be the result of them that where a stranger gives a legacy by will, and afterwards a sum without any evidence that it is intended for the same purpose, it is not taken as a satisfaction. To make it so, it must appear at the time of the gift to be meant as an ademption of the legacy." Without going over the cases, which may be found collected in any systematic treatise on legacies, it may be safely laid down that the whole doctrine which declares that an advancement to a child is a satisfaction of a legacy in a will antecedently executed, proceeds upon the presumption that payment, and not a fresh gift, was intended by the testator. This presumption may be overcome by evidence that such was not *Page 35 
the intention, and when such evidence is offered it may be answered by other evidence of the same character. "The whole question," said Lord Chancellor COTTENHAM, "is one of intention;" thus reaffirming a position which Lord THURLOW had laid down nearly fifty years before. (Powys v. Mansfield, 1837, 3 Myl. Craig, 359.)
The defendants in this case rely upon evidence of the actual intention of the testator, and such evidence being of the most authentic character and entirely satisfactory, it is unnecessary to consider whether the plaintiff's case is within the doctrine of presumed satisfaction. It is not necessary, either, to examine the ground upon which that doctrine, the policy of which has been sometimes questioned, stands. It has never been denied that an intention of the testator, that a gift inter vivos should satisfy a legacy, when once established, must prevail; though it has been doubted upon plausible grounds whether the reasoning, by which the doctrine of presumed satisfaction arising out of the relation of parent and child has been supported, was not too artificial and refined. (Ex parte Pye, 18 Ves., 151; Story'sEq. Jur., § 1118.) But I have not met with any case, English or American, in which the existence of the doctrine has been denied.
There is a supplement to this doctrine of presumed satisfaction, to this purpose: that though the legatee is not the child of the testator, yet if it can be shown that the testator had adopted him, or placed himself in loco parentis, the presumption of satisfaction will prevail. The late case ofPowys v. Mansfield, already referred to, is very full to this effect, and it shows that the relation which the testator had thus assumed may be shown by his acts and declarations; and inMonck v. Monck (1 Ball Beat., 298), where the testamentary provision was in favor of a brother, and the testator subsequently settled a like sum upon him on his marriage, the settlement was held to be an ademption of the legacy, on the ground that it appeared from the will and *Page 36 
settlement that the testator intended to assume the position of a parent towards the legatee. I am unable to see how this case differs in principle from the one under consideration, except that the reason for pronouncing in favor of an ademption is much stronger in this case than in the one referred to. The case cited was not within the principle of ademption between parent and child. That will regard a brother as a stranger. (1 Roper,
365.) But because, upon reading the will and settlement, it appeared that the relation of parent was intended to be assumed by the testator, the court applied the presumption which arises upon that relation. Here the language of the will and of the subsequent advancement proves beyond a doubt that the latter was designed by the testator to be a substitute for the gift; no presumption is required to be indulged. The intention is expressed in language which cannot be misunderstood.
There is still another branch of the doctrine of presumed satisfaction which it may be useful to notice: Where the will expresses the purpose for which a legacy is given, as to enable the legatee to purchase a house or furniture, or to put him out as an apprentice, and the testator afterwards, in his lifetime, furnish him money for the same purpose; this is an ademption. (Debeze v. Mann, 2 Brown's C.C., 166; Trimmer v. Bayne,
7 Ves., 516; Rosewell v. Bennet, 3 Atk., 77; 1 Roper,
365.) Where the identity of purpose is ascertained from the will and the terms of the gift, the court applies the presumption. But suppose the testator to bequeath a legacy, and add language to the effect that if he give a like sum to the legatee in his lifetime, it shall be a satisfaction. If you read the will and the evidence of the gift, the intention to satisfy the former is apparent; and the case will be stronger, if possible, if the will state that the gift which is to have the effect of ademption will be found entered in his books of account.
The result of these views is that a satisfaction, according to the terms of the will, is within the principle of the cases of implied satisfaction; and that the present instance furnishes *Page 37 
an example of ademption stronger than any of the numerous cases founded upon that doctrine, in the proportion that positive proof is more satisfactory than a presumption of evidence.
It is unnecessary in the present case to decide whether an advancement by the testator, intended by him to be in lieu of a legacy, but which intention was not made known to the legatee, in a case where the will had made no provision respecting advancements, and the relation of parent and child, either natural or conventional, did not exist, would adeem a legacy. We think it more suitable to withhold our opinion upon a question not presented on the record, and where our decision, one way or the other, would not form an authentic precedent. We simply hold that this legacy is not now recoverable out of the estate of the deceased, because it was satisfied in his lifetime, pursuant to an express provision of the will.
It is insisted that supposing the legacy to be satisfied by the advancement of 1839, it is reinstated by the subsequent reëxecution of the will and codicils, in January, 1845. If the acknowledgment and renewed attestation which took place at that time are held to have only the effect of a republication, the cases are quite decisive to show that the act had no such effect as is claimed. In Powys v. Mansfield, the testator had republished his will by a codicil executed after the ademption of a general legacy, and the legatee insisted that the legacy was thereby revived. The lord chancellor said it was "very true that a codicil republishing a will makes the will speak as from its own date, for the purpose of passing after-acquired lands, but not for the purpose of reviving a legacy revoked, adeemed or satisfied. The codicil can only act upon the will as it existed at the time; and at the time the legacy revoked, adeemed or satisfied, formed no part of it. Any other rule would make a codicil merely republishing a will operate as a new bequest." (3Myl. Craig, 376.) The cases of Drinkwater v. Falconer *Page 38 
(2 Ves., Sen., 623); Crosbie v. McDouall (4 Ves., 611);Booker v. Allen (2 Rus. Myl., 270); Paine v. Parsons
(14 Pick., 318), are to the same effect.
The question then is whether the acknowledgment in 1845 is to be regarded as the primary and only execution of the will and codicils. The fact which is established, that all the testamentary papers which are material in this case were actually executed and attested at or about the time they bore date, is hostile to this position. This must have been within the knowledge of the testator at the time of the acknowledgment of 1845, for his signature and the attestation of the witnesses were before him. Then, again, if we attach to that act the effect of an original and sole execution, inasmuch as the several papers were separately acknowledged, all the legacies expressly revoked by subsequent codicils, as well as those satisfied in whole or in part by advancements pursuant to the first codicil, would be revived. We can say with full confidence that such was not the intention of the testator; and we entertain no doubt but that the acknowledgment of 1845 was made for the purpose of affording additional evidence, if it should be necessary, of the execution of the several papers at the time they respectively bear date, without any intention of giving them a different operation from that which they would have if they stood upon their original execution.
It is very earnestly argued that the extinguishment of the legacy by the advancement in 1839, if held to be effectual, would be substantially a revocation of the provision in the codicil by which that legacy was bequeathed, and that this cannot be done consistently with an enactment in the Revised Statutes, unless by a subsequent attested paper, or by burning it, c., animorevocandi. The statute does declare "that no will in writing, except in the cases hereinafter mentioned, shall be revoked or altered, otherwise than by some other will in writing," executed and attested according to the statute, "or unless such will be *Page 39 
burned," c., with the intent to revoke the same. (2 R.S., 64, § 42.) The excepted cases, and other directions respecting revocations, are contained in the seven following sections. They are these: first, marriage and the birth of issue, where either the wife or a child shall survive the testator: this is to be a revocation, unless the issue are provided for by the will or by a settlement, or are mentioned in the will in such a way as to show that they were not intended to be provided for; second, the subsequent marriage of a single woman, after executing a will, is a revocation; third, an executory contract to convey property devised is not a revocation; fourth, a charge or incumbrance upon property given by will is not a revocation, but the testamentary devisee takes it subject to the incumbrance; fifth, an alteration of the estate, by which the testator's title is not wholly divested, is not a revocation, unless the intention to revoke is declared in the deed; or, sixth, unless the deed contains provisions inconsistent with the will: if it does, it is a revocation, unless they depend upon conditions which have not been performed. (§§ 43 to 48 inclusive.) The argument of the opinion which I have before mentioned is, that the satisfaction of a legacy by an advancement made by the testator in his lifetime is an implied revocation; that the statute in its general language embraces all manner of revocations, and that the words, "except in the cases hereinafter mentioned," followed, as they are, by certain special instances in which particular implied revocations are allowed, render it quite clear that no other description of revocation, either express or implied, can now exist. The argument appears to be unanswerable, if ademption or satisfaction is the same thing as implied revocation.
The ademption of a legacy of personal estate is not usually called revocation. When the term just mentioned is not used, the act is called satisfaction, payment, performance or execution. But when these terms are thus used, it is not quite in their ordinary sense; for their primary relation is to *Page 40 
some debt, duty or obligation resting absolutely upon a party, whereas a will, having no effect in the testator's lifetime, does not bind him to anything. The word ademption is the most significant, because, being a term of art, and never used for any other purpose, it does not suggest any idea foreign to that intended to be conveyed. It is used to describe the act by which the testator pays to his legatee, in his lifetime, a general legacy which by his will he had proposed to give him at his death. (1 Roper 365, ch. 6.) It is also used to denote the act by which a specific legacy has become inoperate on account of the testator having parted with the subject. But that is immaterial here. Aside from the statute, an advancement of a like sum, with intent to pay the legacy in question, would, in the understanding of every lawyer, be an ademption. Now, the statute does not say anything, in terms, respecting ademptions, nor does it allude to the subject in any way, unless it does so in using the term revocation. To revoke is to recall what one has done or promised. A testator who concludes to anticipate a proposed testamentary gift cannot be said, by any just use of language, to revoke or recall it, when, so far from wishing to undo what he has done, he has concluded to do it sooner than he before intended. By a very loose and indeterminate use of language, anything which renders a bequest inoperative at the testator's death may possibly be called a revocation, and we are shown in the opinion referred to that there are instances where it has been so used. Lord MACCLESFIELD is reported to have said, in a case of double portions, that by the laws of all other nations, as well as of Great Britain, the last was a "revocation of the portion given by the will." The reference to foreign laws shows that the word was used in a very general, and not in a strict or technical sense. It was not said that the will or any part of it was revoked, but that it was a revocation of the portion. It was in a very short opinion taken down by the reporter. (1 P.Williams, 681.) But Lord ELDON, in *Page 41 
a more elaborate opinion, in a case of alleged double portions, used the same terms for the like purpose. After qualifying the gift inter vivos as an ademption half a dozen times, and as satisfaction still oftener, and alluding to an objection made at the bar, that if the testator had not intended that the legacy should be paid he would have altered his will, he adds: "The answer [to that objection] is, that the subsequent advance operates as a revocation, and therefore actual revocation is unnecessary." The meaning is not that the subsequent advance was in a proper sense revocation, but that it operated in that instance in the same way; as if he had said there was no need of his revoking it, as the ademption or satisfaction just as effectually extinguished it. (18 Ves., 155.) But there are a few cases in which judges have been called on to discriminate, in precise and accurate language, between ademption and revocation.Rosewell v. Bennet, already referred to, was the case of a legacy for a special purpose, which it was adjudged he had accomplished by an advance of money in the testator's lifetime. The defendant's counsel relied upon the statute of frauds and perjuries. Lord HARDWICKE said: "As this act of the testator after making his will is not a revocation of the will, but anademption only of the defendant's legacy, I am of opinion that the plaintiff ought to be let into this evidence," c. (3 Atk.,
78.) In Kirk v. Eddows, which has been cited, the defence was that the legacy had been adeemed in part. The vice-chancellor, Sir JAMES WIGRAM, said: "The evidence [to prove his advancement] does not touch the will. It proves only that a given transaction took place after the will was made, and proves what that transaction was, and calls upon the court to decide whether the legacy given by the will is not thereby adeemed. An ademption
of the legacy and not revocation of the will is the consequence for which the defendant contends." The vice-chancellor then referred to the judgment of Lord HARDWICKE, above mentioned. (3Hare, 519.) These two cases are just *Page 42 
one hundred years apart, and, connected as the last is by a reference to the first, they may be taken to show the sense of the English Chancery, during all that time, upon the distinction in question. The exceptions in our statute, which have been much pressed upon our attention, have not, I think, any influence upon this question. They are all cases of revocation by implication: marriage and the birth of issue; the marriage of a testatrix who was feme sole at the execution of the will, and the alienation of the testator's estate by a conveyance containing provisions inconsistent with the will. These were all plain cases of revocation prior to the Revised Statutes, which simply affirmed the common law. (1 Jarman on Wills, 106, 130.) They are not of the same general nature as ademption or satisfaction. They assume that the testator's circumstances had become so far changed that if he had thought of his will he would have altered it; but as the courts know not what change he would have made, they consider him as having revoked it. The courts cannot, consistently with the statute, hold that any other mere change of circumstances will amount to an implied revocation; but I see nothing to prevent their considering performance or satisfaction to be still available according to the law as it existed prior to the revision of the statutes. But, however this may be, where there is nothing in the will providing how a legacy may become inoperative, I think it certain that the statute can have no reference to a case like the present, where the testator had declared in the will itself that the legacy should not be payable in a certain event, and where that event has happened. We do not hold the will revoked, when we follow the explicit directions of the testator in declaring the legacy satisfied. We should ourselves revoke it, in a certain sense, were we to declare the legacy payable in a case in which the will declares it shall not be paid.
The remaining question is, whether the testator, in making the entries upon his books of account, intended to satisfy *Page 43 
the bequest of $100,000 of the debt of the city of New-York, the income of which he, by the will, bequeathed to the plaintiff, and the capital of which he gave to all her surviving issue at her death, or the bequest of the like sum "of the public debt of the city of New-York, bearing five per cent interest, usually called the water loan," which, by the second codicil, he gave to six of the plaintiff's children, or such of them as should survive him. That he referred to one or the other of these bequests is certain, for there is nothing else in the will or codicils to which he could have referred. This is wholly a question of construction upon the entries in the books, and is not free from difficulty. The entries correspond with the bequest in the will in an important particular, in which they at the same time differ from the bequest in the codicil. The entries relate, in express language, to property left to Mrs. Langdon, the plaintiff, by the antecedent testamentary disposition; but in the bequest of the water stock contained in the codicil she took no interest whatever. On the other hand, those entries correspond with the gift in the codicil in several material features, in which respect they do not conform at all to the bequest in the will. First. Both items of funds transferred are stated to have been left by a codicil. The testator appears to have supposed himself to be engaged in executing, by way of anticipation, two testamentary gifts, contained in the same testamentary paper; and that such paper was not his will, but a codicil to his will, executed subsequently. The distinction between the will and the codicils was present to his mind. The second codicil did contain legacies of two several sums of $100,000 in funds. They were, moreover, in immediate juxtaposition, as written down in the codicil. Second. The funds charged were New-York city water stock, and there is a reference to the certificate by which the interest was vested in the trustee. By turning to the certificate it is found that it was truly stock bearing that name which was advanced. It does not appear, *Page 44 
and I do not suppose, there was any material difference in value between this water stock and the other city debt described in the bequest in the will. It carried the same rate of interest, and both being secured by the public faith and corporate responsibility of the city corporation, were probably equally safe as investments. There was, however, a distinction between the two kinds of funds. The water stock was authorized by particular acts of the legislature, which declared that the stock should be called "the water stock of the city of New-York" (Laws 1834, ch. 255; id., 1838, ch. 127); and the testator, as appears by his ledger, subscribed for stock certificates to the amount of $150,000 in the summer and autumn of that year. The codicil by which $100,000 of the water stock were given to six of the plaintiff's children was signed in the month of January, and the entries were in August succeeding that date. We may add to these circumstances that the distinction, between this stock and the other city debt, was kept up in the testator's accounts; the ledger account of the water stock being entitled "New-York city water stock, five per cents, 1860." The distinction between the two kinds of funds we may therefore presume to have been palpable enough to his mind, though not very material in fact. There would be no particular inconsistency, it is true, in his making an advancement of the water stock to satisfy a legacy of other city stock, and if this was the only want of correspondence between the legacy and the advancement it would not be material. It should, however, be remembered that the testator had the other city stock on hand when he made the advancement, for it appears that he did not sell it out until 1844. When he made the advancement he possessed sufficient of both kinds of stock. The legacies were demonstrative, having a reference to the special subject bequeathed, yet, upon the defendants' theory, he advanced water stock to satisfy a legacy of other city stock. Third. By the will, the remainder, after the plaintiff's death, was given to all her *Page 45 
children, or such of them as should survive her, while, by the advancement and the entries which accompanied it, one of her children, Mrs. Boreel, took nothing. In this respect it corresponded with the legacy in the codicil, but differed from that in the will. The advancements were no doubt intended to satisfy and extinguish the claims of all the legatees, who would otherwise have taken an interest in the subject bequeathed, as well the remainders as the primary estates. If the testator intended to adeem the legacy in the will, he intended to cut off Mrs. Boreel altogether, which is not readily to be supposed. A testator may probably do this in cases of implied ademption. It is not essential that an advancement to adeem a legacy on this ground should correspond as to the ulterior limitations, when it is clear that the same family were designed to be benefited. (Kirk v. Eddows, 3 Hare, 521, 2, and cases cited.) But where a testator declares in his will that if he shall make advances to persons provided for in that will it shall be applied on account of the legacies, I do not think a legatee who takes no interest in the advancement can be affected. That would be, as the vice-chancellor said in the case last referred to, revocation and not ademption. If, therefore, this advancement is held to be applicable to the legacy in the will, we must suppose the testator intended to cut off Mrs. Boreel from her share in the $100,000 without any equivalent.
I do not place any reliance upon the memorandum upon the draft of the codicil. It was not a paper made in the course of that transaction, and I do not think it competent for the purpose of explaining it.
I have adverted to all the considerations which appear to favor the position that the legacy given to the six children by the codicil is the one to which the entries apply. Whether they ought to be held sufficient to overcome the striking fact that the entries purport to give to the plaintiff by way of advancement, a life estate in the $100,000, as property *Page 46 
left to her by a testamentary bequest, when, if thus applied, they will supersede a legacy in which she took no interest, it is unnecessary to say, since I think that two considerations, not yet adverted to, are of sufficient weight to compel us to apply the advancement to the legacy given by the will: First. The testator did not intend by the advancement to deprive any of the legatees of what he had given them, or to reduce the amount or value of their legacies. His design was to improve their condition, and not to injure them. By the codicil, the six children of the plaintiff, named in it, or such of them as should survive the testator, took a vested interest in the $100,000 of water stock, to commence in possession at his death. If the advancement of water stock be applied to that legacy by way of satisfaction, a life estate is interposed between the testator's death and the commencement of their enjoyment, and a new period is fixed for determining who among them are to take as survivors, and it is a different person whom they are to survive in order to take. It may very well be that some who have survived the testator will not survive the plaintiff. This singularly dislocates and confuses the dispositions of the codicil. It causes the advancement, which was plainly designed to be substitutional, and will be so in the main if applied to the legacy in the will, to be given for life to a party who takes nothing by the legacy for which it is a substitute; it postpones for the period of another life the title of the parties who were to have taken an estate in possession at the testator's death, and, in a very probable event, it will altogether deprive some of these parties of any benefit from the legacy. Second. By the sixth codicil, executed after the advancement and the entries, the share of Louisa Langdon, one of the six children, in this $100,000 of water stock is taken from her, and the income of it is given to the plaintiff for life, and the capital is given to her other children upon her death. This, of course, assumes the legacy to be still on foot, whereas, upon the theory that *Page 47 
the advancement applied to it, it was adeemed and had become extinct. Louisa's share is given to the plaintiff for life, whereas, by the substituted gift, she was possessed of the whole sum for life.
It must be conceded that the testator acted under some misapprehension, when he made this advancement, as to the precise state of his testamentary dispositions. But I suppose we are obliged to give the same reasonable construction to the act which we would in the case of any other transaction in pais. We must give it such an interpretation as will effect the testator's purpose, if reasonably practicable, ut res magis valeat quampereat. By applying the advancement as a substitute for the legacy in the will, it adjusts itself perfectly to the plaintiff's case, and satisfies the legacy in her favor. I am of opinion that it should be so applied, and that this legacy is adeemed and satisfied upon the principles which have been stated as applicable to the bequest of trust company certificates. The rights of the plaintiff's children are not before us. The suit as originally commenced was not so framed as to settle any question between them and the executors. Besides, it was dismissed as to them by the judgment of the special term. Neither they nor the executors have appealed from that judgment. What has been said, in regard to the effect of the advancement upon the legacy in their favor, has not been with any view to settle their rights. It seemed, however, necessary to consider how far the substituted gift would adjust itself to the testamentary act, in respect to the remainders as well as to the primary estate, in order to determine which of the legacies of city stock he intended to satisfy.
The directions given at the special term, in respect to the fund to be made up in order to secure to the plaintiff the sum of $15,000 of annual income, appear to me correct; and I am in favor of reversing the judgment rendered at the general term and affirming that of the special term. *Page 48