NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—JANUARY, 1877.

## ORDISH v. McDERMOTT.

*In the matter of the Probate of the last Will and Testament*
*of* EDWARD McDERMOTT, *deceased.*

Under 2 R. S., 64, § 42, there can be no implied revocation of a will, by
means other than such as are defined in the statute.
A will made in ignorance of the existence of a living child, is not revoked
even at common law, by the discovery of its existence.

THIS was a proceeding for the probate of the last
will and testament of Edward McDermott, deceased.

The will bore date the 4th day of May, 1859. By it
the testator devised and bequeathed all his property,
after payment of his debts, to his wife, Rose Ann
McDermott, and appointed her his sole executrix.

The objections to the petition were filed by Joseph
G. Ordish, an alleged son of the deceased, by an alleged
former wife; and were to the effect that the will was not
duly executed — that the deceased was not of sound
mind when it was executed, and that it was procured by
undue influence exercised upon him by his wife.

Much testimony was given in behalf of the contest,
ant tending to show that many years ago, the testator
was married to a wife, by whom he had a son, and that
soon thereafter, by reason of the testator's intemperate
habits, and neglect of business, his wife separated from
him, she taking the child; and that the contestant was
a son born of that first marriage.

There was considerable testimony to show that the
testator and his alleged wife were never married; that
she was a person of immoral and lewd character; that the
child in question, the contestant, was born in 1841; that

the alleged former wife, with the son, removed to Connecticut; and there seemed to have been no further intercourse between the testator and his alleged wife thereafter; some evidence also was given, that he supposed that she and her son were deceased.

In September, 1849, the testator married the widow, the legatee and executrix, Rose Ann, with whom he cohabited until his death. Some testimony was given for the purpose of showing that their married life was not entirely harmonious; that several of her relatives, from time to time, were inmates of the family, and that he complained of the expenses of their support, and also of his wife's interference with his moneys, bank books, &c., but the testimony on the part of the proponent substantially contradicted this testimony, and showed that they lived happily and peacefully together; that their relations were of the most affectionate character, and that his wife was instrumental in substantially reforming his intemperate habits.

Due execution of the will was proved; and the circumstances connected with the execution of his will seemed to have been in no way peculiar.

It appeared, however, that the contestant, after wandering about the country considerably, made his appearance, and claimed to be a son of the testator, by his first wife, who afterwards married one Ordish, in New Jersey; that his mother died in 1860, in San Francisco. His visit to the testator in the city of New York seems to have been in 1872. There seems to have been no substantial recognition of the contestant, by the testator, at that time, and his testimony, and that of the widow, differed very materially, in respect to what occurred at the time of the interview; but the circumstances connected therewith do not materially affect the question of the probate of this instrument, except so far as it disclosed to the testator the existence of his alleged son.

The only evidence which was given upon .the question of identity of the contestant, with the son of the alleged first wife of the testator, was given by contestant,—that he was a son of Delia E. Kelly, who subsequently married one Ordish, but whether she was the Delia Kelly who married the testator in 1837, according to the certificate of marriage, did not clearly appear.

J. S. STEARNS, *for proponent.*

W. W. CULVER *and* SAMUEL JONES, *for contestant.*

THE SURROGATE. — I think there are very serious doubts upon the evidence, whether the contestant is a son of the testator. The contestant substantially abandons the objection filed to the probate of the will, and claims that the discovery that testator's son was living, constitutes a revocation of the will, and this is the only question of law, which it seems to me needful to discuss.

The testator died on the 26th day of March, 1875, and it is claimed by the contestant, that in 1872, the proponent was called upon by the contestant, who claimed to be his son, by his former wife, and yet no change in his will was made on that account.

The statute (2 *Rev. Stat.*, 64, § 43) provides that if after the making of a will, disposing of the whole estate of the testator, he shall marry, and have issue of such marriage, born either in his life-time, or after his death, and the wife or issue of such marriage shall be living at the death of the testator, the will shall be deemed revoked, unless provision shall be made for such issue by settlement, or in the will, so as to show an intention not to make such provision.

By section 42, it is provided that no will shall be revoked, or altered, otherwise than by the acts referred to therein, and no mention is made of the discovery of an

heir, either forgotten or unknown by the testator, at the time of the execution of the will, and I am of the opinion that when the statute undertook to define what should constitute a revocation, all other causes must be excluded.

In *Langdon* v. *Astor* (16 *N. Y.*, 9), Chief Justice DENIO, after citing the statute referred to, says: " The argument and the opinion which I have before mentioned is, that satisfaction of a legacy by an advancement made by the testator in his life-time, is an implied revocation; that the statute in its general language embraces all manner of revocations, and that the words, ' except in the cases hereinafter mentioned,' followed as they are by special instances in which particularly implied revocations are allowed, render it quite clear that no other description of revocation either express or implied can now occur. The argument appears to be unanswerable if ademption or satisfaction is the same thing as implied revocation."

In *Delafield* v. *Parish* (25 *N. Y.*, 9), Chief Justice SELDEN says : "Without examining the question whether the circumstances relied upon by counsel would amount to an implied revocation at common law, it seems to me that the statute presents an insurmountable obstacle to the establishment of such a revocation here." And he quotes the statute and the Revisors in their notes, " that it is believed that the provisions contained in the sections referred to, dispose of the whole doctrine of implied revocations."

But if this were not so, it is equally clear that the circumstances disclosed in this case would not constitute a revocation at common law.

In *White* v. *Barford* (4 *Maule & Selwyn*, 10) it was held that the testator having married, and afterwards made his will, and devised to his niece, and afterwards dying

leaving his wife *enciente* with a daughter which was unknown to him, the birth of the daughter was not a revocation of the will. In that case, LORD ELLENBOR- OUGH states the rule to be, that marriage and having children, where both circumstances concur, has been deemed a presumptive revocation, but it has not been shown that either of them singly is sufficient, and he instances a case of a sailor who made his will in favor of a woman with whom he cohabited, and afterwards went to the West Indies, and married a woman of considerable substance; it was held, notwithstanding the will swept away from the widow every shilling of the property, the birth of a child must necessarily concur, in order to constitute an implied revocation.

In *Sheperd* v. *Sheperd* (5 *Term Reports*, 51), in note, substantially the same doctrine is maintained. See also *Brush* v. *Wilkins*, 4 *Johns. Ch.*, 506, and cases therein cited, and discussed.

I am of the opinion that the discovery of the existence of the alleged son, if he be such, did not revoke the will.

That the will has been duly proved, and the same should be admitted to probate.

Order accordingly.