ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of HARRIET J. COOPER, deceased.

[Filed January 5th, 1924.]

**Wills—Legacies—Extensive Consideration of General and Specific Legacies—Instant Legacy Held Specific—Inheritance Tax Payable Out of Estate which Contains Specific Legacies and General Legacies in which the Estate is not Sufficient to Pay All.**

On petition for decree of distribution.

*Mr. Philip Goodell,* proctor for petitioner.

*Messrs. Ames & Crane,* proctors for Stone House Plains Reformed Church.

KOCHER, ADVISORY MASTER.

Harriet J. Cooper died leaving a last will and testament, dated May 15th, 1919, by the second clause of which she provided as follows:

"Second: I give and bequeath to the Stone House Plains Reformed Church of Brookdale, Essex County, New Jersey. five (5) bonds of the denomination of One Thousand Dollars each of the Newark Gas Company; but if I should not own said bonds at the time of my death, I give and bequeath to said Church the sum of Five Thousand dollars."

The testatrix, both on May 15th, 1919, and at the time of her death, owned more than five bonds answering the description set forth in this clause of her will, but her estate is insufficient to pay all the legacies in full, and the problem presented for solution is whether this legacy is general or specific.

The cardinal principle underlying the construction of wills is, of course, that the testator's intention, as expressed

in the will, shall be carried out, unless prevented or controlled by some statute or rule of law.    The intention expressed in this clause of testatrix's will seems to be clear and unmistakable.    The meaning of the clause is exactly the same as though she had said: I give and bequeath five bonds of the corporation named if I own said bonds at the time of by death; but if I should not own them, then I give and bequeath $5,000 in money; or, if I own five bonds of the corporation named at the time of my death, I give and bequeath said bonds to the legatee named; but if I should not own them, then I give and bequeath to it $5,000.    The testatrix's obvious intention was that the legatee should receive from her estate five bonds of the description given, upon condition that she owned said bonds at the time of her death; as the condition was fulfilled, the remainder of the clause, directing what should happen if the condition were not fulfilled, may be disregarded.    Or, to put it in another way, the legacy may be regarded as being in the alternative, bequeathing specifically five bonds in case the testatrix owned said bonds at the time of her death, or bequeathing generally $5,000 in case she did not.    Moreover, the use of the word "said" in the will is significant; it is, in this connection, practically equivalent to the use of the word "my," which, it has been held in the cases to be hereinafter considered, is sufficient to make the legacy specific.    To use the words of *Norris* v. *Thomson, 16 N. J. Eq. 542,* "it seems to me that the language used was a clear reference to the particular bonds which the testatrix possessed when she executed her will, and it shows she meant that the legacy should be discharged by the executor handing over to the legatee bonds which he would find in her strong box after her death."    The legacy is a specific one unless there is some rule laid down by our courts—there is no statute—constraining me to hold to the contrary.

An exhaustive examination of the reported cases in this state dealing with the question of whether a legacy of stocks, bonds or other securities is general or specific, does not dis-

close any case with facts sufficiently similar to the case under consideration to make it controlling.

In *Norris* v. *Thomson, 16 N. J. Eq. 218; reversed, 16 N. J. Eq. 542,* the will, after bequeathing the household effects, &c., to testator's wife, devised and bequeathed "all the rest and residue of my real and personal estate" to his executors, "in trust" "to give" to various named legatees specified numbers of shares of stock or bonds of certain named corporations, and then disposed of "the residue of my estate." Testator, at the time of the making of the will and at the time of his death, owned more than the number of shares of stock and bonds of the corporations named so bequeathed.

The court of chancery held the bequests of the stocks and bonds to be general, on the ground that the mere possession by the testator at the time of making his will of a larger amount of stocks or bonds than are bequeathed, would not make a bequest specific when it is given generally of stocks or of stocks in particular funds without further explanation.

The court of errors and appeals, however, after reviewing the provisions of the will and the circumstances surroundings its execution, held the legacies to be specific, and said (at *p. 549*):

"The intention of a testator upon the subject of specific legacies, as in every question on the construction of wills, is the principal object to be ascertained, and it is therefore necessary that the intention be either expressed in reference to the thing bequeathed, or otherwise clearly appear from the will, to constitute a legacy specific.

"This is not a technical arbitrary rule, to be answered only by the use of particular words and expressions, but is an embodiment of the general principles, by which the character of legacies should be tested and determined, each will resting, for correct construction, upon the language employed, and established surrounding, significant circumstances, if such exist.

"It seems to me that the language used in creating and directing the trusts was a clear reference to the stocks and

particular bonds which Mr. Thomson possessed when he executed his will, and it shows he meant that the legacies should be discharged by his trustees handing over to the respective legatees stocks and bonds which they would find in his strong box after his death.

"If, however, the *language* of the will does not of itself come up to the rule laid down in the books, the circumstances by which the testator was surrounded when the will was drawn, and the whole scope and texture of the instrument, taken in connection with the particular clauses of bequest, clearly indicate the intention for which the appellants and complainant contend."

For concurring opinion, see *15 N. J. Eq. 493.*

In *Blair* v. *Scribner, 65 N. J. Eq. 498; reversed, 67 N. J. Eq. 583,* the testator, after leaving specified securities to his executor in trust for his son, added: "If I should not leave at my decease all of the bonds or stocks mentioned in my said will and given to my executor in trust, he shall not be required to supply said stocks and bonds, but only to take such as I may leave." The testator, although owning sufficient of these securities at the time of making the will to satisfy the legacy, died possessed of less than the amount of the particular securities bequeathed. The court of chancery held that the additional clause showed that the testator intended, so far as these securities were concerned, to give a specified portion of particular stock owned by him at the time of his will, and that the legacy was therefore specific; but the court of errors and appeals, reversing the decree below, held that the legacy was general, and that the only effect of the additional clause was "that his executor, instead of pursuing the usual course of supplying the securities named by him in the trust bequeathed, in case they were not found in his estate at his death, should take such other bonds and stocks as he might leave in order to supply the deficiency." The reason for this rather strained construction adopted by the appellate court is clearly indicated in that portion of its opinion where the court says that "it is to

be borne in mind that the testator was providing for his own flesh and blood. His expressed purpose was to benefit them to the extent disclosed by the provision of the trust clauses, and that purpose must prevail unless the testator has shown by clear language his intention to make its taking effect turn upon the contingency of his property remaining unchanged until his death."

In *Savings, &c., Co.* v. *Crouch, 93 N. J. Eq. 311,* affirmed on the opinion below, *118 Atl. Rep. 927,* there were bequests of specified numbers of shares of specified stocks, without more, except that it appeared that the testator, at the time of making the will, owned the exact number of shares bequeathed of some of the stocks. The legacies were held to be general; and the court said, quoting *3 Pom. Eq. Jur. 1130, note,* that "where the bequest is merely descriptive generally of the stocks, shares, &c., given, the legacy is not specific, although the testator may at the time own stock answering the description, and even may own the exact number of shares given, *e. g.,* as where he gives so much stock, or so many shares, or the like, not using additional words pointing to any identical shares, as 'my' stock, or the stock which 'I' now possess," &c., citing as authorities *Norris* v. *Thomson* and *Blair* v. *Scribner, supra,* and *Mecum v. Stoughton* and *In re United States Fidelity and Guaranty Co., infra.*

The case of *Mecum* v. *Stoughton, 81 N. J. Eq. 319,* is similar in its facts to *Savings, &c., Co.* v. *Crouch,* and applies the same rule quoted in that case.

*In re United States Fidelity and Guaranty Co., 90 N. J. Eq. 254,* holds a bequest of "one-half of the balance of moneys, bonds and investments that I may die possessed of" general.

In *Kearns* v. *Kearns, 77 N. J. Eq. 453,* a legacy bequeathing "all my stock, right, title and interest in S. & P. Co." was held to be specific.

In *Allen* v. *Allen, 76 N. J. Eq. 245,* a bequest of "the sum of $17,000, to be paid to her out of the securities which I now hold, instead of cash," was held to be specific.

In *Pennsylvania Co. for Insurance, &c.,* v. *Riley, 89 N. J. Eq. 252,* the words, "I direct that out of the proceeds of the sale of my house or other property $1,000 shall be set apart and held in trust," were held to make the legacy a general one.

In *Moore* v. *Moore, 50 N. J. Eq. 554,* a bequest of "ten shares of my E. C. N. B. stock" was held to be specific.

In *Trenton, &c., Co.* v. *Cook, 88 N. J. Eq. 516,* a bequest to the testator's executors in trust of "the sum of $70,000, this fund to be composed of mortgages, bonds and securities in my hands at the time of my decease, which may be selected by them," was held to be specific.

In *Aitken* v. *Sharp, 93 N. J. Eq. 336,* testatrix bequeathed "ten Middlesex Water Company bonds, of the par value of $1,000 each." The court said (at *p. 339*):

"The testatrix never owned water bonds of that name, but, for some years prior to the making of the will and continuously down to the date of her death, owned ten Piscataway Water Company bonds of the par value of $1,000 each. There is nothing in the language of the will which indicates her intention to bequeath bonds which she then owned, but, on the contrary, she gave such bonds generally. Such language makes the legacy general and not specific."

Clearly, none of these cases are controlling or will prevent the carrying out of what seems to be the testatrix's intention in this case.

The situation in the case now under consideration has, however, arisen in other jurisdictions.

In *Langdon* v. *Astor, 3 Duer (N. Y.) 477,* the court, in considering a bequest similar to the one here under consideration; said (at *p. 550*):

"A legacy may be specific for one purpose or in one aspect and general in another; specific as entitled to immediate satisfaction, or not liable to abatement, and yet general, as not liable to ademption; a doctrine recognized and established in numerous cases in which the legacies have been held to be general, and applicable in all, where a legacy, general

in its terms, is charged upon, or payable out of a specified fund. In these cases, if the fund exist at the death of the testator, the legacy attaches directly upon it, and as specific is entitled to precedency in payment and is not liable to abatement; if the fund does not exist the legacy, as general, is a charge upon and must be satisfied from the general personal estate. Thus, in *Fontaine* v. *Tyler, 9 Price 94,* where the legacy was held to be specific because the stock remained in the hands of the testator at the time of his death, the chief baron expressly said, that had the stocks been previously disposed of he would have had no difficulty in holding that the legacy was pecuniary, an equivalent term to general."

This case was reversed, but on other grounds, *16 N. Y. 9.*

The case of *Fontaine* v. *Tyler, 9 Price 94; 147 Eng. Rep. 32,* cited in *Langdon* v. *Astor, supra,* is practically identical in its facts with the case now under consideration.

In *Townsend* v. *Martin, 7 Hare 471; 68 Eng. Rep. 194,* the language of the will was: "I give and bequeath the sum of 5,000 pounds sterling Bank Consolidated annuities and I direct that, if at my death I shall not have sufficient stock standing in my name to answer the several legacies hereinbefore given by me as in that stock that my executors and trustees do, out of my residuary estate, purchase sufficient to make up the deficiency." At the death of the testatrix there was more than sufficient consols belonging to her to satisfy the legacy; but the estate was insufficient to pay all the legacies in full. It was held that the legacy was specific and would be paid in full.

To the same effect is the case of *Queen's College* v. *Sutton, 12 Sim. 521; 59 Eng. Rep. 1233.*

In *Roberts* v. *Pocock, 4 Ves. Jun. 150; 31 Eng. Rep. 77,* on the other hand, the testator directed a legacy to be paid out of certain money owing to him on a bond, "but in case I shall receive the said monies, or alter the said security, such receipt or alteration shall not be deemed or construed a revocation of any or either of the said legacies; but the same

shall in such case be paid by and out of some other part of my estate and effects." The bond in question proved uncollectable, and it was held that the legacy should be paid out of the residuary estate.

So in *Raymond* v. *Brodbelt, 5 Ves. Jun. 199; 31 Eng. Rep. 545,* the testator bequeathed a legacy of certain investments; and in case the sums he had already invested should not be sufficient for the purposes of the will he authorized his executors to invest a sufficient part of the estate in the same kind of securities to answer such purposes. The court said:

"This is not a specific legacy; and it is not correct to say a legacy is either general or specific; for there is a general legacy not attended with the qualifications of a specific legacy, yet with an appropriation upon part of the property. That was the ground I went upon in *Roberts* v. *Pocock, supra,* and that is the case here."

The case under consideration appears to come directly within this line of authorities; the securities existed at the death of the testatrix, and the legacy attached directly upon them, and, as specific, is entitled to precedence in payment, and is not liable to abatement; and this construction will carry out the expressed intention of the testatrix.

The general rule cited by the executor in his brief, that in order that legacies may not fail, and that the testator's will may be carried out, and because a specific legacy is subject to ademption, the courts are adverse to construing legacies to be specific and will not do so unless it be clear that the testator so intended, has not been overlooked; but this, after all, amounts to no more than saying that the testator's intention is, if possible, to prevail. Thus, in *Norris* v. *Thomson, supra,* the language used (at *p. 221*) is that "to guard against an ademption or extinguishment of the legacy, contrary to the intention of the testator, the general leaning of the court is against making the legacy specific;" but, as has been seen, the court of errors and appeals in that case did hold the legacy to be specific on the ground that "the language used was a clear reference to the particular bonds which testator pos-

sessed when he executed his will;" and it would appear that the language used by the testatrix in the case now under consideration contains a clearer reference to the particular bonds owned by her when she executed her will than did that used in *Norris* v. *Thompson.*

As was said in *In re Foote, 22 Pick. (Mass.) 299, 302,* "there is no doubt the law favors general rather than specific legacies, and the courts lean towards the former and against the latter. But neither the preference of the law, nor the leaning of the courts, extends to cases where the intention of the testator can be satisfactorily ascertained. That is the polar star to which both look for a guide."

I will advise a decree directing the executor to deliver to the legatee five of the bonds in question, together with the income accrued thereon since the death of the testatrix.

The executor also seeks the court's directions as to his duties in respect to the twenty-eighth clause of the will, which is as follows:

"I direct my executor hereinafter named to pay the legacies above mentioned in full to the several legatees without any deduction for any collateral inheritance tax which may be levied thereon by the State of New Jersey, but to pay such tax out of the residue of my estate."

As has already been stated, the estate is not sufficient to pay the legacies in full, so that there is no residue.

There appears to be no reported case in this state, or in this country, dealing with a similar situation; practically the same state of facts has, however, been adjudicated upon in an English case.

In *Farrer* v. *St. Catharine's College, L. R. 16 Eng. Cas. 19,* the testator provided that all the legacies given by him were given free of duty. It appeared that the general personal estate of the testator was insufficient for the payment of the general legacies in full, and the question was raised as to whether any legacy duty was payable out of that estate on the specific legacies. The court (Lord Selbourne, L. C.) said (at *p. 25*) that a gift of a legacy duty on a specific or

general legacy amounted to a general legacy for the benefit of the specific legatee in the one case, and of the general legatee in the other; and in the event of the general estate being insufficient the gifts of legacy duty must abate along with other general legacies. The value of the specific legacies must, therefore, be ascertained and the amounts of legacy duty payable thereon calculated; and such amounts must be treated as general legacies, and abate accordingly.

The rule laid down by this case appears to be sound. I will therefore advise that the decree direct the executor to ascertain the values of the specific legacies; to calculate the transfer tax on the values so ascertained as well as on the amounts of the general legacies; to consider the respective amounts or tax so determined as general legacies bequeathed to the respective legatees, specific and general, in addition to the legacies bequeathed to them by the will; to add the total amount of the additional general legacies so determined to the total amount of general legacies bequeathed by the will, and on the basis of such total sum of general legacies to determine the proportion in which the general legacies must abate. This proportion of the amount of the transfer tax due on each general legacy bequeathed by the will should then be deducted and retained by the executor from the amount due such general legatee, and this proportion of the amount of the transfer tax due on each specific legacy bequeathed by the will should be paid to the executor by such specific legatee.

For example, suppose there is a specific legacy worth $1,000, and two general legacies of $2,000 and $1,000 each; that all the legacies are taxable at the rate of five per cent., and that, after the payment of the specific legacy, the executor has in his hands a balance of $2,400. The total amount of tax will then be $200. Adding this amount to the amount of the general legacies makes a total of $3,200. The proportion by which the general legacies must abate will, therefore, be computed by deducting from $3,200 the total amount of general legacies including the tax, the sum

of $2,400, the assets available for the payment of the general legacies, and dividing the result by the said amount of $3,200, thus making this proportion one-fourth. The specific legatee, on receiving his legacy, must therefore pay to the executor one-fourth of five per cent. of $1,000, or $12.50. The general legacies having, as has been seen, each abated one-fourth, the executor will pay to the general legatees, respectively, three-fourths of $2,000 minus one-fourth of five per cent. of $2,000, or $1,475, and three-fourths of $1,000 minus one-fourth of five per cent. of $1,000, or $747.50. The executor will then have left in his hands $2,400, plus $12.50 minus $2,212.50, or $200, the amount to be paid for tax.