No. 64.—John C. Rogers and others, plaintiffs in error, *vs.* Elizabeth French, defendant in error.

[1.] If a parent gives a legacy to a child, not stating the purpose with reference to which he gives it, he is understood as giving a portion; and if the father afterwards advances a portion to that child, though of less amount, it is considered by the Courts as an ademption of the legacy. *Aliter*, as to the gift of a legacy by a stranger.

[2.] Whether the advance adeems the legacy is a question of intention which may be deduced not only from the face of the will, but the presumed ademption may be destroyed or confirmed by *parol evidence*.

[3.] The rule that to overcome an answer which is responsive to a bill, two witnesses, or one and corroborating circumstances, are required, does not apply to an answer upon information and belief only.

In Equity, in Marion Superior Court. Tried before Judge WORRILL, August Term, 1855.

John French and Elizabeth, his wife, filed a bill against the executors of John Rushin, dec'd, for the recovery of the legacies left them under the will. The bill and answer are voluminous, as is also the evidence in the case. The following is sufficient to understand the questions made in this Court:

The defendants gave in evidence the following receipt:

" July 30, 1830. Received of John Rushin Five Hundred Dollars, which is considered and to be considered by all whom it may concern, as that amount advanced by him, the said John Rushin, to me as legacy, that would ever be coming to me from him in his lifetime, or from his estate after his decease." (Signed,) JOHN FRENCH.

John Rushin's will was dated 26th June, 1855, and by that will he gave to Mrs. French a little negro worth not exceeding $200, and one equal share of all his property. Subsequent to the making of his will, he distributed some of his negroes to his children, and among others, to Mrs. French. There was some evidence to show that the question of the ademption of this legacy of the little negro had been submitted to Judge Taylor. Defendant's Solicitors requested the Court to charge—

1st. That if they believed that after the making of the will, bequeathing to complainant a little negro, worth $200, over and above her equal proportion of the property to be distributed under the will of John Rushin, the testator, in his lifetime, gave complainant a negro of equal or greater value than the one mentioned in the will, this is *prima facie*, an ademp-

Rogers *et al. vs.* French.

tion of the legacy; and to rebut this presumption of an ademption, the testimony must be clear and relevant, not presumptive merely, but a demonstration from the language and conduct of the testator, that he considered the gift by the will as a subsisting benefit."

The Court declined to charge the latter portion of this request, but charged, "that to rebut the presumption of an ademption, the Jury might resort to presumptive evidence, but the presumption must be clear and satisfactory. That if they believed the testator gave complainant, after the making of the will, and at or about the same time he gave other property to each of his other children of equal value, they might infer from these facts that the legacy was not adeemed.

Defendant's Counsel farther requested the Court to charge, 2d. That in a Court of Equity, the presumption is against a double portion, and the receipt given by French in 1830, although it bears date prior to the will, is, nevertheless, a charge against him, for which he is bound to account.

This the Court declined to charge. 3d. As to effect of a responsive answer, as evidence, and that an answer is responsive where it has necessary connection with and grows out of the allegation, and is explanatory thereof.

This the Court gave, and added: he supposed the latter clause referred to that portion of defendant's answer, which stated that Judge Taylor had determined that the legacy of the little negro was adeemed. The Court charged that this was not responsive, there being no allegation in the bill on the subject.

To these charges as given, and refusals to charge, defendants excepted and have assigned error thereon.

MILLER & HALL, for plaintiffs in error.

STUBBS & HILL, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was the Court right in refusing to give the first

charge as requested, without the modification and explanation which accompanied it in the charge as given?

In *ex parte Pye*, (18 *Vesey*, 152,) Lord *Eldon* observes, "that where a father gives a legacy to a child, the legacy coming from the father to his child must be understood as a portion, though it is not so described in the will; and afterwards advancing a portion to that child, though there may be slight circumstances of difference between the advance and the portion, and a difference in amount; yet, the father will be intended to have the same purpose in each instance; and the advance is, therefore, an ademption of the legacy. But a stranger giving a legacy is understood as giving a bounty —not paying a debt; he must, therefore, be proved to mean it as a portion or provision, either on the face of the will, or if it may be, as it seems it may, by evidence applying directly to the gift proposed by the will." (See also *Elkenhead's case cited in* 2 *Vernon*, 257 ; *Precedents in Chancery*, 182 *and Ambler*, 325.)

Thus, then, we have the rule clearly stated and carrying this doctrine of ademption to its utmost limits. The English Courts regret, as well they may, that it has been pushed so far. We see and feel the reasonableness of the rule which requires the Courts to lean against double portions, as it is called. And we can readily understand why a legacy in a will should be adeemed by a subsequent advance having the same object in view as the legacy, notwithstanding any slight difference in value or amount between the legacy and the advance. A father, for instance, directs by his will, his executors to pay to a daughter $1.000 to purchase, upon her marriage, household furniture. The child, however, marries in the lifetime of the father, and he advances to her $1.000, or some sum approximating to that for the same purpose specified in the will. This is, and manifestly should be, a case of ademption, and so should all others standing upon the same footing. But suppose the legacy be a little negro for a nurse, and the subsequent advance be of money to buy a carriage—

is there any propriety in construing this advance to be an ademption of the legacy?

Listen to the reasoning of the Chancellor in the case of *Pye*, just cited in support of what he deduces from the books, as the " unquestionable doctrine" of the Courts upon the subject: "By a sort of *artificial* rule, in the application of which legitimate children have been very harshly treated, upon an *artificial* notion that the father is paying a debt of nature, if the father afterwards advances a portion on the marriage of that child, though of less amount, it is a satisfaction of the whole or in part; and in some cases it has gone the length, consistent with the principle, *but showing the fallacy of much of the reasoning*, that the portion, though much less than the legacy, has been held a satisfaction, in some instances, upon this ground, that the father, owing what is called a debt of nature, is the judge of that provision by which he means to satisfy it; and though at the time of making the will he thought he could not discharge that debt with less than £10.-000, yet, by a change of his circumstances and of his sentiments upon that moral obligation, it may be satisfied by the advance of a portion of £5.000."

Is not such reasoning, from the mouth of such a Judge, well calculated to inspire the hope that the day is not distant when *all precedents* will be abolished, and every case be tried by an enlightened tribunal, upon its own merits! To such a consummation the world must, from the necessity of the case, to say nothing of its policy, sooner or later come; for the world will not contain the law books that will be written, much less will Lawyers and Judges, with their stinted income, be able to buy them. Necessity will become the mother of justice in this case, as she is said to be generally of invention. Would that some Caliph Omar would arise, to apply the torch to all the repositories of legal learning throughout the globe! Precedent—precedent—this is the vampire that is forever draining the very life-blood of justice. Give the books of reports as fuel for baths—they will contribute much

more to the health, happiness and convenience of the people, than as at present employed!

But to return from this digression, and without elaborating the rule further, we remark that the presumed ademption may be destroyed or confirmed by the application of parol evidence of a different intention by the testator. (2 *Atkins,* 48; 3 *Atkins,* 77; 7 *Ves.* 708; *Select Eq. Cas.* 141.) And this was the substance of the charge as given. The Judge instructed the Jury, that they might, in order to rebut the presumption that the advance made by the testator to French and wife, in his lifetime, and subsequent to the making of the will was an ademption, look to the fact, of whether or not similar advancements were made to the other children. And this the Court was authorized to do, by the testimony of Mrs. Wilkes, the widow of John Rushin, who states that she lived with the testator from 1834, the year before he made his will, down to 1843, when he died; and that the advancements made to all the children during that period were *equal,* and that the testator tried to make them so.

[2.] Was the advance of $500 made in land, by the testator to John French, the husband of his daughter, in 1830, five years before he made his will, a charge against his share of the estate? The case of *Upton versus Prince,* (*Cases Tem. Talbot,* 71,) is cited in support of the proposition, that an advance made *prior* to the making of a will, may adeem a legacy. The testator, *William Prince,* had two sons— William and Peter, Elizabeth, Sarah, Mary and Anne. In his lifetime, and soon after the sons became of age, they desired their father to advance to each of them a sum of money towards setting them up in the world; and agreed that whatever he should advance should be part of what he should give them by will; whereupon, the father, on the 11th of June, 1734, advanced £1500 to William Prince, who gave the following instrument for the same: "Received of my father the sum of £1500, which I do hereby acknowledge to be on account and in part of what he hath given *or shall, in and by*

Rogers *et al. vs.* French.

*his last will, give unto me his son."* And on the 31st March, 1727, the father advanced £1500 to Peter Prince, who gave a similar instrument to that of his brother.   On the 17th of August, 1730, William Prince, the father, executed his will, which contains the following recital: "And whereas, I have heretofore paid to, given or advanced with my children, William, Elizabeth and Sarah, the sum of £1500 apiece: Now, I do hereby, in like manner, give and bequeath unto my three other children, Peter, Mary and Anne, the several sums of £1500 apiece."   He then willed that the residue of his estate should be divided in six equal parts, and gives the one sixth to each of his children.   He deposited the two receipts given by William and Peter in a drawer with his will; and intimated that the said drawer should not be opened after his death by either of his said sons, unless his other children, or one of his sons-in-law, were present.

The question was, whether Peter should have a new sum of £1500, upon the words of the will, or whether he should not be in the same case with William; they both being equally advanced by the father, and this seeming only a mistake in the testator?   The Lord Chancellor decreed the £1500 received by Peter in his father's lifetime, to be a satisfaction for what the father gave him by his will, and that he should not have another £1500 upon the words of the will.

While we controvert the general doctrine, that a previous advance made to a child, shall adeem an express gift by a subsequent will, wherein and whereby the testator undertakes to dispose of the property which he then has, still, we are not prepared to deny the justice of this case.   Here it was a question of intention—as it should be in every case—and all the facts go to show that Peter's name was, by mistake, inserted with those of the unportioned part of the children. The whole will establishes that it was the intention of the testator that the two sums of £1500 paid to William and Peter, should be deducted out of the legacies given to them; else, why deposit their receipts in a drawer with his will, with directions that the drawer should not be opened after his death.

by either of his said sons, unless his other children, or one of his sons-in-law, were present ?

Before dismissing this case, I would remark that the able Counsel, Mr. Hall, who adduces it, concedes that it is the only direct authority he can find upon the point ; and if *he* has found none others, we may safely assume that none other exists. I will add, that *Upton vs. Prince* is only recognized by Mr. *Williams on Executors*, and other law writers in this way. They say, in referring to it, that if an advance previously made, will adeem a legacy, *a fortiori* will an advance made subsequent to the execution of the will. In our judgment, it is always a question of intention, in *all* cases, whether the advance be before or after the execution of the will; and that no arbitrary rule should control the matter.

How, then, stands the present case ? The testimony shows, that in 1830, the date of the receipt given for $500, given by French to his father-in-law, old man Rushin advanced $500 to each of his children. This fact is not disputed ; but it is insisted that French got $500 extra of the rest; else, it is asked why should a receipt be required of him, when the rest gave none? Perhaps they have been lost or destroyed. The defendants, and not French, have had the custody of the testator's papers. Perhaps French lived at a distance and forwarded this receipt, not knowing but such an acknowledgment would be exacted of all. Be this as it may, there is one fact which, to our minds is conclusive, that this $500 was not intended, by the testator, to be a charge on the legacy of French and wife. In his will he mentions, in every other case, what sums are to be charged against his other children or a portion of them ; and there is not a word as to this extra advance, as it is pretended, to French. It was made five years only before the will was executed, and his attention was called to the subject by referring to the respective advances made to some of the other children. It is not likely that this would have been overlooked or forgotten. He is silent as to the $500 advance made to each of the children in

1830. And from this we infer that the testator, himself, considered that all, at that time, were advanced *pari passu.*

But it is suggested that the defendants have sworn to the fact, and that their answer is not overcome by counteracting testimony. They only testify as to their information and belief, and the rule does not apply to such answers.

[3.] Was the Court wrong in making the addition which it did to the 3d charge, as requested? It is not complained that the charge, as asked, was not given. The error assigned is, that the Judge selected that portion of the defendant's answer, which set forth the award made by Judge TAYLOR, and stated that the same was not responsive to the bill; whereas, it is urged that the same was responsive; and that admitting it was not, still, it was wrong to single out this particular portion of the answer, and omit any reference to the rest.

In the first place, we concur with the Circuit Court in holding that the reference to the award made by Judge TAYLOR, was not responsive to any allegation, but matter purely in evidence. And secondly, that the omission of the Court to refer to the rest of the answer, was favorable to the defendants. It left the Jury to infer that the balance of the answer was responsive.

It is finally contended, that the advancements made to the different legatees, and to French and wife amongst the rest, should be brought into hotchpot. But no such necessity exists, provided the advancements were equal; for in that event, each is entitled to an equal share under the will, of what remains. We see no error in this record, to make it proper to send back a case, like this, which has been pending so long, and occupied so much time of the country. There should be an end of litigation, unless manifest injustice has been done.