# SUPREME COURT.

ANN E. DEGRAAF agt. EZEKIEL TEERPENNING, personally and as surviving executor of the last will and testament of SOLOMON TEERPENNING, deceased, HELEN TEERPENNING, OLIVER J. TEERPENNING, SOLOMON TEERPENNING and SARAH E. KRAUS.

*Will — Legacy — what will be deemed a satisfaction or ademption of a legacy — statute of limitation.*

Where a parent or other person *in loco parentis*, bequeaths a legacy to a child or grandchild, and afterwards, in his lifetime, gives a portion or makes a provision for the same child or grandchild *without expressing it to be in lieu of the legacy, it will, in general, be deemed a satisfaction or ademption of the legacy.*

The legacy is to be considered a portion, and if the testator afterwards advances the *same sum* upon the child's marriage, or the happening of any other event, he is to be deemed to have done it to accomplish his original object in giving a portion. Under such circumstances it will be held to be intended by the testator as a satisfaction and not a double portion.

The presumption is that the legacy, where a payment to the amount thereof is made to the legatee, has been adeemed, and such presumption is conclusive unless overcome by proof.

This presumption may be overcome by evidence that such was not the intention, and when such evidence is offered it may be answered by other evidence of the same character. The whole question is one of intention.

By the will certain real estate was devised to the defendants, who were sons of the testator as tenants in common. Each of these devises was declared to be " upon this express condition, that he pay, or cause to be paid, such legacies, and perform such acts and pay such moneys as I shall herein enjoin upon him to perform." The legacy bequeathed to the plaintiff, Ann Eliza, by the will, and which is the subject of this litigation, is in these words: "Fifthly. I give and bequeath unto my

Degraaf agt. Teerpenning.

daughter Ann Eliza $400, to be paid unto her one year and one day after my decease, provided she has lawful issue, and if she has no lawful issue, then I order and will that my two sons pay to her the interest of the $400 yearly, and every year during her natural lifetime, and after her decease I give and bequeath the said $400 unto my surviving daughters, and their children, if they should have deceased, and if, and when she shall have issue, the money shall be paid to her." The codicil declares: "And whereas in my said last will I have given to my daughter the sum of $400, now, it is my will, that if my said daughter Ann Eliza die without lawful issue, then the same is hereby given to my daughters, and not to my sons, to be divided to my said daughters equally." The testator died October 6, 1847, and the will was admitted to probate November 6, 1847. On the day the codicil to the will was prepared the testator gave to his daughter, Ann Eliza, the plaintiff, the sum of $400 in money, saying to her, "take this as a present from your father." The husband of the plaintiff, at the same time, signed a note for it, but has never been called upon to pay the note. A similar sum was handed to the other daughters, accompanied with the same remark. The husband of the plaintiff, in the years 1848, 1849 and 1850, made a demand of the defendants, of the interest due his wife, which was refused, claiming that the legacy had been paid by the testator during his lifetime. This action was commenced in 1876.

*Held,* that the legacy was extinguished and paid during the testator's lifetime. The mere fact of taking the note of the plaintiff's husband was not inconsistent with the ademption of the legacy, the bequest of which legacy was never that of an absolute gift to the daughter, unless she had issue, but only of the income during life. Nor is the presumption of the ademption of the legacy overcome by the clause in the codicil.

The relief sought is a judgment of this court, that the legacy, together with accrued and accruing interest, is a lien upon the real estate of the defendants, and that the plaintiff is entitled to a decree of sale of so much thereof as shall extinguish the past interest, and obtain the principal sum of $400, which she asks shall be duly invested, that she may hereafter obtain the annual interest thereon, that in the end the ultimate payment of such principal in conformity with the will and codicil may be assured.

*Held,* that if the plaintiff is entitled to a judgment declaring that the legacy is a charge upon the realty (which seems very doubtful), she was so entitled to bring an action for that purpose, immediately after her demand in 1848 was refused. More than twenty years having elapsed since the right to bring such an action accrued, it is barred by the statute of limitations.

*Ulster Circuit, October,* 1876.

ACTION to have a legacy declared a lien and charge upon certain real estate.

*D. M. De Witt*, for plaintiff.

*F. L. Westbrook*, for Ezekiel Teerpenning.

*C. A. Fowler*, for other defendants.

WESTBROOK, *J.* — The plaintiff is the daughter of Solomon Teerpenning, deceased. The defendant Ezekiel is his son, the defendant Helen is the widow of another son, John S., deceased, and the remaining defendants are the children of said John S. and the grandchildren of the said Solomon Teerpenning, deceased.

The will of Solomon Teerpenning is dated July 23, 1840, and a codicil thereto bears date October 2, 1845. The testator departed this life October 6, 1847, and the will and codicil were admitted to probate by the surrogate of Ulster county, November 6, 1847. The defendant Ezekiel and John S. Teerpenning, deceased, were the executors thereof and qualified as such.

By the will certain real estate was devised to Ezekiel, certain other to John S., as tenants in common. Each of these devises was declared to be " upon this express condition, that he pay or cause to be paid such legacies, and perform such acts and pay such moneys as I shall herein enjoin upon him to perform."

The legacy bequeathed to the plaintiff, Ann Eliza, by the will, and which is the subject of this litigation, is in these words: " Fifthly, I give and bequeath unto my daughter Ann Eliza $400, to be paid unto her one year and one day after my decease, provided she has lawful issue at that time, and if she has no lawful issue then I order and will that my two sons pay to her the interest of the $400 yearly, and every year during her natural lifetime, and after her

decease I give and bequeath the said $400 unto my surviving daughters and their children, if they should have deceased, and if and when she shall have issue the money is to be paid to her."

Similar legacies were also made to other daughters.

The codicil declares: " And, whereas, in my said last will I have given to my daughter Ann Eliza the sum of $400, now it is my will that if my said daughter Ann Eliza die without lawful issue, then the same is hereby given to my daughters, and not to my sons, to be divided between my said daughters equally."

William H. Degraaf, the husband of the plaintiff, in the years 1848, 1849 and 1850, made a demand of John S. Teerpenning, deceased, as one of the executors of the interest due his wife, who refused payment thereof, and claimed that the legacy had been paid by Solomon in his lifetime, and that nothing would be paid by the executors except on legal compulsion.

The first question which this cause presents is, was the legacy to the plaintiff paid by the testator in his lifetime. The facts upon which the answer depends are these: In the will the personal property not specifically bequeathed to others was given to the sons Ezekiel and John S. Amongst the personal property which would so have passed was a bond and mortgage made by Palmer and wife, to Solomon Teerpenning, bearing date May 9, 1836, and recorded the same day, to secure the payment of the sum of $1,500 and interest. This was assigned on the 28th of August, 1845, for the consideration of $1,536.63.

On the day the codicil to the will was prepared, at the office of Peter Van Gaasbeck in Kingston, the plaintiff and her husband, Delilah Cole (another daughter), and wife of Henry Cole, and a third daughter, Rachel, who met their father at that place, were all present. The testator upon that day gave to the plaintiff the sum of $400 in money, saying to her, according to the evidence of her husband and also of

Degraaf agt. Teerpenning.

others then present, " Take this as a present from your father."
Mr. Degraaf further said that at the request of Major Van
Gaasbeck he signed a note for it; the form or precise language
of which is not given, nor has he ever been called upon to pay
it. A similar sum was handed to Mrs. Cole, the same remark
being made to her, for which her husband also signed some
paper. Subsequently, the daughter Rachel received the same
amount of money from her father, the language being again
repeated.

Whether an advance made by a father to his child is an
ademption of a legacy contained in his will, is a question of
intent. The rule upon that subject is thus stated in *Lang-
don* agt. *Astor's Executors* (16 *N. Y.*, 9; *see pages* 34, 35);
" For instance, where a parent, or other person in *loco parentis*
bequeaths a legacy to a child or grandchild, and afterwards,
in his lifetime, gives a portion, or makes a provision for the
same child or grandchild, *without expressing it to be in lieu
of the legacy, it will, in general, be deemed a satisfaction or
ademption of the legacy.* This is upon the ground that the
legacy is considered a portion; and if the testator afterwards
advances the *same sum* upon the child's marriage, or any
other occasion, he does it to accomplish his original object in
giving a portion. Under such circumstances it is held to be
intended by the testator as a satisfaction, and not a double
portion (*Story's Eq. Jur.*, secs. 1111, 1112). The relationship
between the testator and the legatee creates a presumption of
fact that the advancement was in the nature of payment, and
was so intended. * * * This presumption may be over-
come by evidence that such was not the intention; and when
such evidence is offered it may be answered by other evi-
dence of the same character. ' The whole question,' said
lord chancellor COTTENHAM, ' is one of intention;' thus
reaffirming a position which lord THURLOW had laid down
nearly fifty years before (*Powys* agt. *Mansfield*, 1837, 3 *Myl.
& Craig*, 359)."

It will be seen from the authority cited, and also from that

of *Hine* agt. *Hine* (39 *Barbour*, 507) that the presumption is that the legacy, when a payment to the amount thereof is made to the legatee, has been adeemed, and that such presumption is conclusive, unless overcome by proof. The counsel for the plaintiff relies upon two circumstances, and only two, to overcome such presumption ; first, the giving of the note by the husband ; and, second, the clause in the codicil.

First. It would aid the discussion very materially if the form of the note, if such it was, which Mr. Degraaf gave, was before us. Unfortunately this action has been so long delayed (nearly thirty years) that facts have been forgotten, and the individual who prepared the papers (Peter Van Gaasbeck, jr.) is dead. Some clew, however, is given in the form of an expression which was used by the father in handing the money to the plaintiff; it was declared to be "*a present*" to her from her father ; and also in the declaration made by the deceased to John H. Schryver, one of the witnesses to the codicil, to whom the testator declared "that he had sold some property, and meant to make a disposition of that to his daughters while he lived." With these two significant declarations to guide us, and which are so fully established, it is hardly fair to assume that the testator immediately falsified his own words by turning the money, which at the instant of giving he declared to be a "present," into a loan made to the husband. Giving to the expression used at the time of the payment of the money the force fairly due to it, must we not assume that there was in the paper signed by the witness Degraaf nothing inconsistent with the avowed intent of the testator declared in the very act of giving, and that the paper signed also harmonized with the testator's scheme as evinced by the will and codicil, that the plaintiff should have the use of the money during her life, and yet, if she died childless, the principal to go as the codicil immediately executed declared. No other hypothesis will harmonize the spoken words with the prior and subsequent acts, and, as it does, upon well settled principles of law and of logic,

that hypothesis must be accepted as true. It was a present in any sense, even though a note had been taken which had obligated Degraaf to refund the money, provided his wife died without issue. By it, immediately, advantages were secured to the plaintiff, and she received a present benefit from her father's estate. The mere fact, then, of taking the note, if it was such an instrument, was not inconsistent with the ademption of the legacy; the bequest of which legacy was never that of an absolute gift to the daughter, unless she had issue, but only of the income during life.

Secondly, Neither is this presumption overcome by the clause in the codicil. If we are right in our conjecture as to the object and intent of the note or paper signed by the husband, as the testator had never intended Ann Eliza should have the $400 unless she became the mother of children, it was but reasonable, as he had made provision for the repayment of the advance upon the death without issue, to declare where the said $400 in that case should go. Such a declaration in the codicil became necessary to carry out the intent. It is also significant that whilst the will provides for the payment of interest to the plaintiff during life, no such provision is repeated in the codicil, but the principal is alone disposed of. Is not the reason obvious? Did not the plaintiff then have the money itself; and why should interest be paid by others upon the sum which she was herself enjoying?

From the facts, then, that an advance was made to the plaintiff by her father of the exact sum bequeathed, which, in the absence of contrary proof, is to be deemed an ademption of the legacy, that such advance was made from property willed to others in the original will, whose duty it would have been, had such advance not been made, to have paid the legacy, that the other daughters, to whom no property was specifically bequeathed by the codicil, also, during the testator's life, received from their father the identical amount of their legacies, and that another (Josephine), to whom the codicil devised certain real estate, received by such codicil a less sum

in money than by the will, and from the very long acquies-
cence by the plaintiff in the position of the executors that the
payment to her by the testator was intended for an
ademption of the legacy, I must hold that this legacy was
extinguished and paid during the testator's life.   As the share
which the plaintiff would receive from her father's estate,
even though this legacy was held to be unextinguished,
would perhaps be only reasonable, I should have been better
satisfied if my conclusions could be otherwise.   Who should
be the objects of Solomon Teerpenning's bounty, and the pro-
portions of each, was, however, for him to decide.   His
intentions must prevail.   When the law raises a presumption
of his intention in making a gift, that presumption must be
overcome by evidence.   None has been produced, and on
the contrary, all the surroundings evince to me very clearly
that the $400 advanced to the plaintiff by her father was
designed to extinguish the income upon that sum secured
to her during life by the will, and the note or memorandum
given by her husband was taken to meet the possible con-
tingency of her death without issue.   Whether or not in
case the money should never be paid by Degraaf, those
who are entitled to receive it upon her death without issue
can have any claim upon the estate, is not now decided.
It is enough to say, and to hold, that the plaintiff, having
received this money herself for her use during life, is in no
situation to ask that the sum of $400 should be invested for
her benefit, and that she be paid the interest thereon during
the years which have passed since the same was payable by the
terms of the will.   Less reluctance is felt in reaching the con-
clusion we have expressed, on account of the very long delay
in bringing this action.   This point has already been referred
to, but it is worth a repetition.   As early as the year 1848 the
plaintiff had full knowledge of the position assumed by the
executors.   Twenty-eight years subsequently this action is
brought to trial.   Events have faded from memory, and the
lips of some witnesses are sealed by death.   The years that

have intervened testify with great force to the acquiescence of the plaintiff, in the position of those now sought to be charged. A decision in her favor would overturn the testimony which her conduct for more than a generation has furnished. It was well said by WILDE, J., in *Andrews* agt. *Sparhawk* (13 *Pickering*, 393, *see page* 400) : " If a party will sleep over his rights for a great length of time, he must not be permitted to take advantage of his own laches, and to call for full proof, which it may be impossible for the other party to procure. Stale demands are not to be favored in a court of equity." The great good sense of these observations is so apparent as to need no comment. The silence and repose, which should ever follow a long lapse of time, must not now be broken by claims upon stale demands. Public policy and family peace alike forbid.

Thus far no attention has been given to the evidence of Lawrence C. Van Aken, a witness produced by the defendants. It is true that his presence in Kingston upon the day that the payment of the money was made is denied by other witnesses, but his general character is not impeached, nor is his evidence unreasonable. It is conceded that he was in the employ of Solomon Teerpenning at the time the codicil was prepared, and it is not unreasonable to suppose that he should, as he testifies he did, have driven the horse and wagon which carried the testator to Kingston. That such a fact would be better remembered by him, as it was his personal act, than by the others, is also apparent. With no personal interest in the issue of the action, it is difficult to conceive of a motive for false testimony in one bearing a good character, as he must, in the absence of impeaching evidence, be presumed to have. Mr. Van Aken says, that Mr. Solomon Teerpenning told him on his way to Kingston that " he was going to pay the girls their legacies, so as to do them some good." The witness further testified that the old gentleman afterwards told him, " he had given to Ann E. Degraaf and Delilah Cole their money, and had

taken their husband's notes to show." These statements harmonize so well with the whole transaction, and give such full force and effect to all that was said and done, that the truth of the facts contained therein, supported by the positive testimony of a living witness, must be assumed rather than the hypothesis of the plaintiff's counsel, which gives undue prominence to the taking of the alleged note, and ignores the force of the conceded language spoken at the very instant of the delivery of the money.

There is another objection taken by the defendant's counsel to the maintenance of this action, which it seems to me is equally fatal. The relief sought is the judgment of this court that the legacy, together with accrued and accruing interest, is a lien upon the real estate of the defendants, and that the plaintiff is entitled to a decree of sale of so much thereof as shall extinguish the past interest and obtain the principal sum of $400, which she asks shall be duly invested,. that she may hereafter obtain the annual interest thereon, and that in the end the ultimate payment of such principal in conformity with the will and codicil may be assured.

It is unnecessary to discuss the question how far a cause of action for yearly accruing payments may be barred, and how many, if any, are now barred by lapse of time. The point is, can the plaintiff now have the judgment of this court, declaring that the legacy itself was made by the will a lien upon the real estate? The Code (sec. 97) provides: "An action for relief, not hereinbefore provided for, must be commenced within ten years after the cause of action shall have accrued." It was held in Bruce agt. Tilson (25 N. Y., 194, 196) that this section of the Code covers the same ground with section 52, page 301 of 2 Revised Statutes, which declared : " Bills for relief, in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not herein provided for, shall be filed within ten years after the cause of action shall accrue, and not after." If, however, the fact that this action is predicated upon a

Degraaf agt., Teerpenning.

will, a sealed instrument, takes it out of the operation of this section (sec. 90), which requires such an one to be brought in twenty years, is equally operative. This suit has not been brought in either ten or twenty years since a cause of action accrued, but a much longer period than either had elapsed when it was commenced. If the plaintiff is entitled to a judgment declaring that the legacy is a charge upon the realty (a very doubtful proposition), she was, certainly, so entitled to bring an action for that purpose after her demand in 1848 was refused, and which demand and refusal was repeated during the two immediately succeeding years. In *Bruce* agt. *Tilson*, before referred to, which was an action for specific performance of a contract for the sale and conveyance of real estate, it was also held : " The statute of limitations begins to run at the time the plaintiff might bring his equitable action, and is charged with notice that his right is denied ; a new cause of action cannot be created by a subsequent demand of specific performance." No reason is apparent to me why that case and the statute do not apply to the one we are considering. We repeat, that the question is not whether any and all remedy to recover annual payments is barred, but the true one is, can this court, after more than twenty years have elapsed since the right to bring such an action accrued, decree that the will of Solomon Teerpenning, deceased, made the legacy, now sought to be enforced as such, a lien and charge upon the real estate of which the defendants are now the owners ? The yearly payments can only be adjudged liens by deciding that the original bequest had such a character ; and as the right of action to have that so declared accrued at a period long since terminated, the statute prohibiting its maintainance after that period applies with full force. In short, as the right to a judgment of this court enforcing and declaring the original legacy a charge upon the real estate is gone and barred by lapse of time, no judgment having such an effect can now be rendered. If the recent accumulations of interest, and those which may still

·Degraaf agt. Teerpenning.

follow, are adjudged to be incumbrances upon the realty, and are enforced as such, the court would then necessarily determine now, what it could as well have done over twenty years ago, had a suit for that relief been then instituted, that by the will and codicil the testator, Solomon Teerpenning, deceased, made such a charge thereon. In no aspect which the case presents to us would such a judgment be either proper or legal. The plain language of the statute law of the state forbids it, and the relief asked for by the complaint must also, for this reason, be refused.

The result of our examination, then, is, that for the reasons that the testator in his lifetime, by payment to the plaintiff, extinguished the legacy to her, and that the relief sought, even though such ademption had not been made, is barred by the statute of limitations, the complaint of the plaintiff should be dismissed.