Brunn, Executor, etc., vs. Schuett and husband.

*December 13, 1883 — January 8, 1884.*

ESTATES OF DECEDENTS. *(1) Evidence of intention to extinguish debt from legatee. (2:1) Release of mortgage: failure to deliver. (2:2) Executor may deduct debt from legacy.*

[1. Whether, where a legatee was indebted to the testator at the date of the will, and there is nothing in the will to indicate an intention to release or extinguish the debt and, in addition, to give the debtor the whole amount of the legacy, extrinsic evidence is admissible to prove such an intention, is not determined.]

2. A father, who held a note and mortgage executed by his daughter, signed a release thereof and placed it with the note and mortgage in his safe. A short time afterwards he made his will, bequeathing to the daughter an amount larger than her indebtedness to him. All of the papers remained in the safe until after his death. *Held:*

(1) The release never took effect, for want of delivery, and the note and mortgage became part of the assets of the estate.

(2) The estate being solvent, the mortgage need not be foreclosed. The equities of the parties can be adjusted by the probate court, and the executor can deduct from the legacy to the daughter the amount due from her.

APPEAL from the County Court of *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"The deceased [George Hahn] had seven children. To each of these he gave a portion of his property, May 2, 1876. To his daughter, the defendant *Caroline*, he gave the 150 acres of land described in the complaint, and at the same time took back from her a note and mortgage executed by her and in favor of his daughter Salome for $1,500, as a part of the advancement then made to her. At the same time he gave his son Jacob 280 acres of land, and took back from him a note and mortgage for $2,500, also payable to Salome, as the balance of the advancement then made to her. These mortgages were recorded at the time. He then made a will, in 1876, and another in 1877. In January, 1881, the deceased

conveyed to Salome seventy acres of land, valued at $5,000, and took from her an assignment to himself of the two notes and mortgages, which were thereupon recorded. April 13, 1881, in the absence of all his children, he executed an ordinary release of each note and mortgage, and without ever parting with them he deposited each of these releases, together with the notes and mortgages, in his safe, where they remained until after his death. April 28, 1881, he made his will, and by it gave his property to his children, as follows: To Magdaline, $1,500; to Salome, $1,000; to Elizabeth, $2,000; to *Caroline*, $2,000; to Barbara, $1,000; to Louisa, $500; to Jacob, $2,500; and Jacob was also made residuary legatee and devisee. The provisions for *Caroline* and Jacob' were in these words: "*Fourth*. I give, devise, and bequeath to my daughter *Caroline*, wife of John Schuett, the sum of two thousand ($2,000) dollars. . . . *Seventh*. I give, devise, and bequeath to my son Jacob the sum of twenty-five hundred ($2,500) dollars. *Eighth*. I give, devise, and bequeath to my son Jacob, after the payment of my debts and funeral expenses, and after the erection of a good monument on my grave, *the residue of all my property, personal or real*." May 12, 1881, the testator died. May 16, 1881, in pursuance of a family consultation and the concurrence of the executor, the releases were recorded. June 7, 1881, the will was admitted to probate. July 18, 1881, the executor filed an inventory of the personal property, appraised at $11,990.96.

"The executor brings this action to foreclose the note and mortgage of $1,500, so given by *Caroline* to Salome, and by her assigned to the deceased, and to set aside the release of the same so recorded. The court found that this note and mortgage were satisfied, discharged, and extinguished by the release; that there was nothing due thereon from *Caroline*, and that the same should be surrendered and delivered up to her; and that the complaint should be dismissed, with

costs.  Judgment was thereupon entered accordingly, from which the executor has appealed."

For the appellants there was a brief by *E. P. Smith, Nath. Pereles & Sons,* and oral argument by *Mr. Smith.*

For the respondent there was a brief by *Cotzhausen, Sylvester, Scheiber & Jones,* and oral argument by *Mr. Cotzhausen.*

CASSODAY, J.   The court found that the note and mortgage of $1,500, executed by *Caroline,* and here sought to be foreclosed, had been released and discharged by her father during his life-time.  By his will the testator left to *Caroline* a legacy of $2,000, and it is claimed that she is entitled to this amount, and that, in addition, the note and mortgage must be regarded as released.

Parol evidence was given on both sides, and some excluded.   Prior to the statutes requiring wills of personal as well as real property to be in writing and formally executed, a very wide range was given, especially by the ecclesiastical courts of England, in admitting receipts, letters, statements, memoranda, and declarations of the testator, as indicative of testamentary acts.  1 Redf. on Wills, 542.   Since the statutes (sec. 2282, R. S.) the field of inquiry has been very much narrowed and simplified, so that, as a general rule, extrinsic evidence cannot be received either to explain or vary the written instrument.   1 Redf. on Wills, 566, 596; 2 id., 442; *Doe dem. Hiscocks v. Hiscocks,* 5 Mees. & W., 363; *Horwood v. Griffith,* 4 De G., M. & G., 700; *St. Luke's Home v. Ass'n for Indigent Females,* 52 N. Y., 191; *Morgan v. Burrows,* 45 Wis., 211.   Of course, such evidence is often resorted to in case of wills (as well as deeds) for the purpose of placing the court in the position of the testator, so as to more intelligently interpret the language used.  *Ibid.;* 2 Redf. on Wills, 183; *Morgan v. Burrows, supra; Messer v. Oestreich,* 52 Wis., 689; *Martin v. Drinkwater,* 2 Beav., 218;

*Snyder v. Warbasse*, 11 N. J. Eq., 463. But where the language of the will is plain and unambiguous, and the object and subject of the testator's bounty is definitely pointed out, and there is no latent ambiguity nor chance for implication, extrinsic evidence is not admissible to enlarge, diminish, or control the meaning of the words employed.

Here the will went into effect immediately upon the death of the testator, and disposed of all the property he then possessed, both real and personal. The amount of the legacy so given by the will to *Caroline* must therefore, necessarily, be her full share of the property which her father possessed at the time of his death. The alleged release of the note and mortgage was not executed by the testator after the making of his will, and hence the question is not presented whether such release operated, presumptively or otherwise, as an ademption of the legacy *pro tanto*, within the rule laid down in many cases. *Rosewell v. Bennett*, 3 Atk. Ch., 77; *Aston v. Pye*, stated in the opinion of the chancellor and a note to *Eden v. Smyth*, 5 Ves. Jr., 341; *Trimmer v. Bayne*, 7 Ves. Jr., 515; *Monck v. Lord Monck*, 1 Ball & B., 304; *Ex parte Pye*, 18 Ves. Jr., 140; *Pym v. Lockyer*, 5 Myl. & C., 29; *Kirk v. Eddowes*, 3 Hare, 509; *Dawson v. Dawson*, L. R. 4 Eq. Cas., 504; *Nevin v. Drysdale*, id., 517; *Rogers v. French*, 19 Ga., 316; *May's Heirs v. May's Adm'r*, 28 Ala., 141; *Zeiter v. Zeiter*, 4 Watts, 212; *S. C.*, 28 Am. Dec., 698; *Richards v. Humphreys*, 15 Pick., 133; *Clendening v. Clymer*, 17 Ind., 155; *Degraff v. Teerpenning*, 52 How. Pr., 313; *Van Houten v. Post*, 32 N. J. Eq., 709.

As suggested, the release was executed by the testator about two weeks prior to the time he executed the will. He never delivered it to *Caroline*, nor any one in her behalf, but retained it in his own possession until the time of his death. Did the mere fact of its execution operate *instanter* as a discharge, satisfaction, and extinguishment of the note and mortgage? If it did, then it is very certain that the note

and mortgage had no legal existence, either at the time of making the will or at the time of the testator's death, and hence could not pass to his executor as a part of his estate. If it did not have that effect, then it is equally certain that it continued as a subsisting claim in favor· of the testator, and against *Caroline* and her land, up to the time of his death. Assuming that the note and mortgage did so continue to be the property of the testator to the time of his death, then certainly they thereupon passed to his executor as a part of his estate, unless the mere execution of the will containing the legacy to *Caroline*, and its going into effect by the death of the testator, operated as a discharge, satisfaction, and extinguishment of the note and mortgage. Is such the law, or the legal presumption, in the absence of anything in the will to indicate such an intent? In *Rickets v. Livingston*, 2 Johns. Cas., 97, it was said in the leading opinion, and in effect held by the whole court, that "a legacy to one who, at the date of the will, is indebted to the testator, does not release or extinguish the debt, unless it appears to be so intended on the face of the will." That language was quoted and sanctioned by SAVAGE, C. J., in a case where the legacy was from a father to a daughter, as here. *Clarke v. Bogardus*, 12 Wend., 67. To the same effect are *Curey v. Goodinge*, 3 Brown Ch., 110; *Byrn v. Godfrey*, 4 Ves. Jr., 6; *Chester v. Urwick*, 23 Beav., 404; *Strong's Ex'r v. Bass*, 35 Pa. St., 333; *Blackler v. Boott*, 114 Mass., 24; *Wright's Appeal*, 89 Pa. St., 70.

On the other hand, it has been held, by courts of great ability, that a mere naked legacy to one indebted to the testator at the date of the will, with nothing upon the face of the instrument to·indicate the contrary, raises a mere presumption that such legacy was not intended as a release or extinguishment of the debt, and hence that such presumption may be overcome by extrinsic evidence. *Zeigler v. Eckert*, 6 Pa. St., 13; *S. C.*, 47 Am. Dec., 428; *Wilmot v. Wood-*

*house*, 4 Brown Ch., 227; *Eden v. Smyth*, 5 Ves. Jr., 341; *Sorrelle's Ex'r v. Sorrelle*, 5 Ala., 245; *Snyder v. Warbasse*, 11 N. J. Eq., 464; *Brokaw v. Hudson's Ex'r*, 27 N. J. Eq., 135; *Sayre v. Sayre*, 32 N. J. Eq., 61. This was put by GIB-SON, C. J., in *Zeigler v. Eckert, supra,* upon the ground that parol evidence was not admitted to control the will, nor to raise, but only to rebut, an equity, or to repel such rebutting evidence. That case seems to belong to a distinct class. *McGuire v. Adams*, 8 Pa. St., 286. In *Chester v. Urwick, supra,* the learned master of the rolls said it was very dangerous to carry the principle of admitting extrinsic evidence a step further than in *Eden v. Smyth, supra* (which was long before the statute), as the result would be, in most cases, to completely alter the effect and operation of a will by parol evidence.

Where a legatee named in a will is actually indebted to the testator by note and mortgage at the time of making the will, and continues to be so indebted up to the time of the testator's death, and there is nothing in the will to indicate an intention to release, satisfy, or extinguish the debt, and in addition give to the debtor the whole amount of the legacy, it may be, and to my mind is, a serious, if not a very doubtful, question, whether, since the statute requiring wills of personal property to be in writing and formally executed, extrinsic evidence should be admissible to prove such unexecuted intention to satisfy and extinguish the debt, and thus correspondingly increase the amount of the legacy. But it is unnecessary here to determine the question, for assuming that such evidence was admissible, and assuming for the present, also, that the execution of the release was not a satisfaction and extinguishment of the note and mortgage, still there is no evidence of anything said or done by the testator at the time of making the will, nor at any time thereafter, sufficient to rebut the presumption that the legacy was not intended to be paid in full, nor to rebut the pre

sumption that it was not intended as a satisfaction and extinguishment of the note and mortgage.   On the contrary, the declarations of the testator during the time indicated a purpose on his part to have the amount of the note and mortgage deducted from the legacy.

But the doubt above indicated does not at all trench upon the right of showing by parol evidence that a testator during his life actually surrendered, satisfied, and extinguished a debt in favor of himself and against one who turns out to be a legatee.   The question, therefore, remains, whether the release executed prior to the will was, in fact, a satisfaction and extinguishment of the note and mortgage.   The learned counsel for the defendants strenuously contend that the release was binding upon the father and his estate as a voluntary settlement, notwithstanding it was never delivered. In support of this, counsel cite Perry on Trusts, and numerous cases there cited, to the effect that if a party execute a voluntary settlement by deed it will be binding upon the settlor, although he never parts with it, but keeps it in his possession until his death.   Secs. 103, 104.   In some of these cases there were deeds of trust; in some the deeds were delivered to or for the benefit of the person intended; in some the deeds remained in the possession of the maker, with direction to some one to deliver or record; in some the deed was direct to the beneficiary; and in some it was held that the seal imported a consideration, the recitals a delivery, and the benefit implied an acceptance.   These cases have a bearing upon the questions here involved, but seem to be too remote to require specific analysis.   To indicate the more recent rulings of the English courts, it may be well to mention specially *In re Way's Trusts*, 2 De G., J. & S., 371, and the cases cited in *Garnsey v. Mundy*, 24 N. J. Eq., 243.

In *Wilmot v. Woodhouse*, 4 Brown Ch., 227, the court seemed to be of opinion that the testator did not mean to

insist upon the bond, but it was said that if the testator desired to cancel the bond he should have shown his intention so to do by tearing off the seal.

In *Byrn v. Godfrey*, 4 Ves. Jr., 6, the testator had declared to his executor that he never meant to call for payment of a promissory note which he held against his debtor, but it was held to be a part of the assets of his estate, which were insufficient for the legacies,— a charge on the real estate having failed for want of a proper attestation of the will. The lord chancellor observed: " It is not an actual release at any one given time, so that I can state that the debt was gone by the act of the person to whom it was due; nor is it a legacy. . . . I wish I could have decided the other way, for it is clear what the intention was; but the great danger of the case makes it impossible."

In *Tufnell v. Constable*, 8 Sim., 69, the testator held a bond against T. for £1,200, and indorsed and signed thereon these words: "I do this day forgive the Rev. T. the sum of £700, part of the within-named sum of £1,200, for which he is indebted to me; and I hereby acquit him of this bond upon the payment of the sum of £500, with interest upon the whole till the same be paid off. In consequence of this gift I have revoked, by codicil of this date, a former bequest to the amount of the said sum of £700." Subsequently, he made another will, which was admitted to probate, but it contained no reference to the plaintiff; and it was held that the release was without consideration, and could not be sustained in equity.

In *Chester v. Urwick*, 23 Beav., 404, the testator left a legacy of £1,000 to R. F. B., who was at the time indebted to him upon a bond. Afterwards the testator drew out in his own handwriting a list of legacies which he proposed to give, by way of a codicil to his will. In this list he proposed to give R. F. B. £8,000, to be made up in part by the bond and the above legacy, but which codicil was never exe-

cuted nor proved as a testamentary act; and it was held by the master of rolls that the bond was not released, and that R. F. B. took the legacy subject to the payment of the debt.

In Pennsylvania it was held that, in order "to discharge a debt due on promissory notes, by way of gift to the debtor, a release under seal, or for a consideration, or an actual delivery or cancellation of the notes, is essential. An intent so to do, or instructions given for the delivery up or destruction of the notes, will not suffice, though shown to have existed when the creditor was making distribution of his estate, and the debtor was a favorite nephew." *In re Campbell*, 7 Pa. St., 100. This was followed in *McGuire v. Adams*, 8 Pa. St., 286, where it was held that repeated declarations of satisfaction and refusals to receive pay by a step-mother did not release a debt from her step-son.

In *Milroy v. Lord*, 4 De G., F. & J., 274, the question was whether a voluntary settlement had been created merely by a gratuitous and voluntary deed-poll, executed and retained by the settlor; and Lord Justice TURNER observed that the law was "well settled, that, in order to render a voluntary settlement valid and effectual, the settlor must have done everything which, according to the nature of the property comprised in the settlement, was necessary to be done in order to transfer the property and render the settlement binding upon him." That language was quoted and sanctioned in *Warriner v. Rogers*, L. R. 16 Eq., 340; *S. C.*, 6 Eng. (Moak), 781. There it was said to be the one indispensable thing to give validity to a declaration of trust, "that the donor or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration; should have effectually changed his right in that respect and put the property out of his power, at least in the way of interest." Both of these cases, and the language quoted, were expressly

sanctioned, and certain other English cases repudiated, in the still more recent case of *Richards v. Delbridge*, L. R. 18 Eq. Cas., 11; *S. C.*, 9 Eng. (Moak), 669, where D., who was possessed of leasehold business premises and stock in trade, shortly before his death purported to make a voluntary gift in favor of his grandson E., who was an infant and who assisted in the business, by the following memorandum, signed and indorsed on the lease: "This deed, and all thereto belonging, I give to E. from this time forth, with all the stock in trade." The lease was then delivered to E.'s mother on his behalf, but it was held to be ineffectual, and that the indorsement contained no valid declaration of trust in favor of E. The substance of that decision by the late learned master of the rolls is, that in order to transfer property without a valid consideration there must be such acts as amount in law to a conveyance or assignment, so as to completely divest the donor or settlor of any further legal ownership in such property, or else there must be what is recognized as a valid declaration of trust. These cases were followed in *Moore v. Moore*, 10 Eng. (Moak), 788; *Heartley v. Nicholson*, L. R. 19 Eq. Cas., 233; *S. C.*, 11 Eng. (Moak), 816.

The same principles are sanctioned by a late and well-considered case in New York, where the intestate placed bonds in two envelopes, and indorsed and signed thereon a memorandum that they belonged to his sons in specified proportions; but it was held not to constitute a valid gift because there was no delivery, nor a declaration of trust. *Young v. Young*, 80 N. Y., 422. The rule thus stated, as to the necessity of delivery, is in harmony with the expressions of this court as to gifts *causa mortis*. *Wilcox v. Matteson*, 53 Wis., 23.

Here the testator made certain advances to his children in May, 1876. The notes and mortgages in question were taken by him in the name of Salome, as her share of such

advances. Had he retained possession of them, the authorities cited by counsel for defendants would have been more applicable, to show that the father held them in trust for Salome. That would have been more like a deposit in the name of a son, as in *Gerrish v. New Bedford,* 128 Mass., 159, where the father was held upon the evidence to be a trustee. But there is no evidence here to indicate any intention of making any advancement to any of the children after May, 1876, unless it be the excess in the value of the land deeded to Salome, over and above the mortgages. Probably the legacies given by the will differ in amounts because they were graduated with reference to previous advancements. *Camp v. Camp,* 18 Hun, 217. Certainly, the amount of the note and mortgage executed by *Caroline* cannot be regarded as an advancement to her at the time they were taken. On the contrary, it must be presumed that the value of the land then conveyed to her was in excess of what he then intended to advance to her, to the amount of the note and mortgage exacted in return. There seems to have been no reason for making any further advance to her or Jacob at the time the releases were executed, which did not exist in May, 1876, and all the time intervening. The fact that the notes and mortgages were payable six months after his death, seems to indicate that it was then his purpose to make further bequests in his will to then aid the respective mortgagors in paying the notes and mortgages, as he did. The precise motive which induced the execution of the releases two weeks before making the will is not very apparent. It may be that he thought there would be some difficulty in getting the mortgages from the records after his death. In our judgment, the evidence fails to show that in executing the releases he thereby intended they should take immediate effect, and operate then as a discharge, satisfaction, and extinguishment of each of the notes and mortgages. On the contrary, his declarations at the time, as

given in the testimony of the scrivener, indicate that his intention was that the amount of the note and mortgage against *Caroline* should be deducted from a legacy he thereafter proposed to give her by will; and the same with Jacob. There is really no evidence of anything said at the time indicating that the releases were intended as advancements.

In *Merkel's Appeal*, 89 Pa. St., 340, it was held that an "advancement is a question of intent; that intent must be proved to have existed at the time of the transaction, and by the cotemporary acts and declarations of the parties. Verbal declarations of a parent that money for which he held a note or bond against a child was intended as an advancement are insufficient to establish it. They must be shown to be a part of the *res gestæ*, and accompanying the acts done." *Watkins v. Young*, 31 Grat., 84.

The releases never took effect as such for want of delivery. They could not operate as declarations of trust, because they did not contain the requisite expressions for that purpose. For the reasons given, we must hold that the notes and mortgages were existing and valid claims against the makers, respectively, at the time of the testator's death, and passed to his executor as a part of his estate. We do not think, however, that there should have been any foreclosure of the note and mortgage. The estate seems to be solvent, and the equities of the respective parties can readily be adjusted in the probate court. There can be no question but what the executor has the right to deduct, from the legacies to *Caroline* and Jacob, the amounts of the notes and mortgages against them, respectively. *Courtenay v. Williams*, 3 Hare, 539; *Rose v. Gould*, 15 Beav., 189; *Rickets v. Livingston*, 2 Johns. Cas., 97; *Strong's Ex'r v. Bass*, 35 Pa. St., 333.

*By the Court.*— The judgment of the county court is reversed, and the cause is remanded with direction to dismiss

the complaint, but without prejudice to the adjusting of the matters of difference in the county court, as above indicated. The costs of both parties in this court must be paid out of the estate.